Spear, J.
The two items of charge may be considered separately. In order to determine the first, we are called upon to construe the statutes of Ohio upon the subject, and to ascer *216 tain, as a practical matter, what, by the laws of Massachusetts, as now enforced, is required- of life insurance companies incorporated under the laws of Ohio doing business in that state. If, as a matter of fact, companies organized in Ohio, doing business in Massachusetts, are required to pay excise tax at a rate greater than Massachusetts companies doing business in this state are required by our tax laws to pay, then the exaction is proper and may be enforced; otherwise not.
Section 2745, of the Revised Statutes, provides that “ every agency of an insurance company incorporated by the authority of any other state, or government, shall return to the auditor of the county, in which the office or agency of such company may be kept, in the month of May, annually, the amount of the gross receipts of such agency, which shall be entered upon the tax list of the proper county, and subject to the same rate of taxation for all purposes that other personal property is subject to at the place where located.”
Section 282, Revised Statutes, has this provision: * * * * “ When, by the laws of any other state or nation, any taxes, fines, penalties, license fees, deposits of money, or of securities or other obligations or prohibitions, are imposed on insurance companies of this state, doing business in such state or nation, or upon their agents therein, so long as such laws continue in force, the same obligations and prohibitions, of whatever kind, shall be imposed upon all insurance companies of such other state or nation doing business within this state, and upon their agents here.”
A construction was given to the foregoing sections of the statute by this court in the decision of the case of The State ex rel. The Fire Association of Philadelphia v. Reinmund, the present defendant, rendered in J nne of last year. In that case the defendant had charged against the relator, as additional to the tax required by section 2745, three per cent, on gross receipts, because of a law of the state of Pennsylvania, which imposes an annual tax of three per cent, upon gross receipts of foreign insurance companies doing business in that state, thus seeking to collect of that company a tax of about five and one-half per cent., while in Pennsylvania an Ohio company would only *217 be taxed at tbe rate of three per cent. The relator had tendered an amount sufficient to make the whole tax equal to three per cent, on the gross receipts, and asked a writ of mandamus to compel the defendant to accept that sum in full. A peremptory writ was awarded. The case was not reported, but the court must necessarily have determined that the two sections were not cumulative, but that section 282 was enacted for the purpose of equalizing burdens, and that that section could have application only where, by the laws of another state, the tax imposed upon Ohio companies was greater than that imposed in this state under section 2745, and then only to the extent of such excess. In other words, our law is protective in its character, its purpose being to protect Ohio insurance companies from impositions which might be put upon them by other states, and not retaliatory in the sense of first imposing upon foreign companies such taxes as are imposed upon other foreign corporations under like circumstances, and then, in addition, a* sum equal to what other states may impose upon our companies doing business there. And the superintendent of insurance performs his whole duty in the matter when he requires companies organized out of this state to pay, in addition to the amount paid as taxes in the several counties, a sum sufficient to make the total equal to the amount that would be realized were the rule of taxation of the state under whose laws the ■foreign company is organized, applied to such company’s business transacted in this state.
This view is in consonance with a recognized policy of this state of long standing, which is to invite, rather than repel, the investment and use here of foreign capital. In this spirit, the obvious interest of the state is to encourage the location here of agencies of companies organized in other states having large experience as insurers and possessed of abundant capital, in order to afford to our people the manifold benefits of the security given by their contracts; and any unnecessary discrimination against those companies would be inconsistent with this en-lighted policy, and would tend to injuriously affect our people. The language employed in the sections quoted fails to show *218 any purpose on the part of the legislature to depart from this well-settled policy.
The law of Massachusetts relied upon to justify the amount charged by the defendant against the relator, is embraced in the following sections:
“ Sec. 25. Every corporation and association engaged within the commonwealth, by its officers, or by agents, as defined by chapter one hundred and nineteen, in the business of life insurance, whether incorporated by this commonwealth, or otherwise, shall annually pay an excise tax of an amount to be determined by assessment of the same at the rate of one-quarter of one per cent, per annum upon á valuation equal to the aggregate net value of all policies in force on the 31st day of December, then next preceding, issued or assumed by such corporation or association, and held by residents of the commonwealth.
' “ Sec. 31. Every life insurance company, corporation, association or partnership, incorporated or associated by authority of any other state of the United States, by the laws of which state, a tax is imposed upon the premium receipts of life insurance companies chartered by this commonwealth and doing business in such state, or upon their agents, shall annually, so long as such laws continue in force, pay a tax or excise upon all premiums charged or received upon contracts made in this commonwealth, at a rate equal to the highest rate imposed during the year upon life insurance companies chartered by this commonwealth, or upon their agents doing business in such other state.”
Section 25 has received construction by the Supreme Judicial Court of Massachusetts. A law similar in all respects to this section, except as to the per cent, imposed, was held in Connecticut Ins. Co. v. Commonwealth, 133 Mass. 161, to be a tax not upon property, but upon the franchise, the right to do business, being as to foreign corporations, thus permitted to exercise the franchise by comity, a condition which the state sees fit to prescribe attached to the privilege granted. A like construction was given by this court, in West. Union Telegraph Co. v. Meyer, 28 Ohio St. 522, to a law similar to section 2745, *219 above quoted, imposing a tax upon gross receipts of foreign express and telegraph companies. So that, the object and nature of section 25 of the Massachusetts law and of section 2745 of our law is the same. Each imposes a tax upon the privilege of doing business; each aims to raise revenue, and each is to be enforced according to its terms, irrespective of the law of any other state upon the subject. Section 31 has received practical construction by the tax commissioner of Massachusetts. No case is cited showing that it has received judicial construction; nor is it necessary to a determination of the present case that construction be given to it by us. It is, however, apparent that the two sections, taken together, relate to the same subject-matter, to-wit: the imposing of burdens upon foreign life insurance companies as a condition to their doing business in that state. As above stated, this court has held that a tax on gross receipts is a charge for the privilege of doing business; section 31 imposes a tax on gross receipts; hence it, as well as section 25, imposes a tax on the privilege of doing business. So far the two are alike. But it is not (as in 25) absolute in its requirements; it is contingent upon the prior imposition by another state, of burdens by way of taxation upon gross receipts of Massachusetts companies, and the existence of the continuous right of such imposition, and the declared purpose is that foreign companies shall pay excise tax upon premiums ret eived in Massachusetts, at a rate equal to the highest rate imposed by such other states upon Massachusetts companies. This purpose would apparently be accomplished by adding to the sum realized by the mode prescribed by section 25 such tax on gross receipts, as would make the whole sum exacted equal to the highest rate imposed by such other state upon Massachusetts companies, and would not seem to require that the tax on gross receipts should necessarily be added to the rate imposed by the other state to the amount realized by the assessment of one quarter of one per cent, on net values. In the absence of authoritative construction by the courts of Massachusetts, it is reasonable to treat the two sections as in pari materia, section 25, as fixing the absolute rate of taxation; section 31 as a proviso author *220 izing the imposition of additional excise tax, to the end that the entire tax shall equal the highest rate imposed upon life companies chartered by that commonwealth doing business in other states. And we may assume, that, were a case made, the courts of Massachusetts would give a construction to section 31 similar in spirit to that given by this court to section 282 of our statute.
But as before suggested, the question is, what is actually imposed by way of tax upon Ohio companies doing business in Massachusetts? Perhaps this question is fully answered by the statement that in fact there is no Ohio life insurance company doing business in Massachusetts. But we may go farther and inquire what practice prevails there as to insurance companies of other states. This question is one of fact. Before the defendant can justify an exaction of the character here being considered, he must make it appear that,' as matter of fact, the authorities of Massachusetts require of foreign companies a greater tax than our authorities impose upon foreign companies. This he has neither shown nor attempted. On the contrary, it is shown, by testimony, that the practice in Massachusetts upon the subject is in strict accord with that of this state as enforced by this court in The State ex rel. The Fire Association of Philadelphia v. Reinmund, Supt., before referred to. That is, if the tax of the other state does not exceed one-quarter of one per cent, upon the net value of the policies in force on the 31st day of December preceding, then that would be all that the tax commissioner (answering to our superintendent of insurance) would assess or collect; while if the tax in the other state on Massachusetts companies, assessed upon gross receipts, is in excess of one-quarter of one per cent, on net value of’ policies, such excess only is exacted in addition to the one-quarter of one per cent. So that, an Ohio company doing business in Massachusetts would be required to pay no more than is by our section 2745 required of Massachusetts companies doing business here, unless it were shown that one-quarter of one per cent, upon the net value of policies in force in that state, was a sum greater than the per *221 centage of the gross receipts, in which case there would be added the excess only.
Applying the Massachusetts rule here, if the rate of percentage on net value of policies, as provided by section 25, is in excess of the sum that would be produced by the per centage assessed in Ohio on gross receipts, then the Massachusetts company is subject to further assessment to the extent of such excess ; but if the amount realized by the per centage on net value of policies of the company, December 31, preceding, is not larger than would be realized by our assessment on gross receipts, then no further exaction can, be required. To illustrate, the gross receipts of the relator in Ohio for the year 1886, were $24,720. The annual taxes on this sum, imposed by section 2745, amount to $621.80. The net value of policies outstanding on the 31st of December, 1886, hold by citizens of Ohio, amounted to $349,815,75. One-quarter of one per cent, on this is $874.54, being an excess of the tax above given, of $252.74. Upon payment of this last mentioned sum the relator will have fully satisfied the claim of the defendant under the sections of the law under consideration. We hold that so long as the present mode of assessment prevails in Massachusetts, this state has no ground for retaliation, and that, except to the extent above stated, there is no authority for the charge of one-quarter of one per cent, on the net value of the policies.
The other item in dispute is a charge of one cent on the $1,000 insured by the relator on lives, compensation for valuation of policies. Section 279 of the Revised Statutes provides that “ when the laws of any other state of the United States authorize a valuation of life insurance policies by some designated state officer according to the standard herein provided, any other standard which makes the value of the policy not less than that of the standard herein provided, the valuation made according to the said standard, by such officer, of the policies and other obligations of any life insurance company not organized under the laws of this state, and certified by said officer, may be received as true and correct, and no further *222 valuation of tbe same shall be required of sucb company by the superintendent of insurance.”
Section 282 of the Revised Statutes provides, that “ there shall be paid, also, by every life insurance company doing business in this state, annually, by way of compensation for the valuation of its policies in case no certified valuation of the same has been furnished to the superintendent of insurance, as provided in section two hundred and seventy-nine of this chapter, one cent on every thousand dollars insured by it on lives.”
The relator furnished to the defendant proper certificate of the certified valuation of its policies, made by the commissioner of insurance of Massachusetts, the proper state officer. The valuation was according to the standard provided in our statute. "We find no authority in law for this exaction, nor does the fact that the relator, in former years, paid a like charge, or that, at the request of defendant, the company’s agent furnished the data upon which the defendant’s valuation was based, estop the relator from disputing the charge.
Peremptory writ awarded.
Owen, C. J., being a member of one of the relator companies, did not sit.