Parker, C. J.
This cause was argued altogether upon the question, whether the act of the legislature, passed June, 1812, exacting one per cent, per annum, upon the capital of all banks, which should be in operation after the first day of the then ensuing October, could legally and constitutionally be applied ,to those banks (of which the Portland bank is one) whose charters existed prior to the passing of that act.
Although the common presumption is, that acts, passed by the legislature, according to the forms prescribed in the Constitution, are founded in authority given by the people to that department; and although many powers, from time to time exercised by the legislature for the common good, may be the necessary and proper effect of the general power of making laws, which belongs to that department, and yet are not expressly delegated in the constitutional charter ; yet, whenever it manifestly appears to the judiciary power, that an act, complained of, does in fact violate the Constitution, or affect the rights of individuals in a manner which is repugnant to its character and principles, there is no doubt that such act must be |*254] declared void and inoperative. For *the Constitution is the supreme law of the land, and the only source of authority to the legislature, as well as to the other branches of the government.
We should not hesitate, therefore, in such case, to give effect to the primary law, the Constitution, being bound by our oaths so to do. And we should suppose that any act of the legislature, which required such a decision, was passed hastily, and without due consideration, which sometimes happens from the multiplicity of business before that body, and the want of time and opportunity, which sometimes occurs, to examine with sufficient minuteness the various bearings which their acts may have upon the rights or interests of the community.
We have, therefore, in order to decide this cause, deliberately examined the objections which have been made to the act under which the treasurer proceeded, to determine whether it militates with the general principles or any positive provisions of the Constitution ; and the result of our inquiry is, that it does not, but that it is perfectly consistent with that instrument, with the rights of the corporation which complains, and with the usage and practice of the country, under the Constitution, from the time of its adoption.
The charter, by which the plaintiffs were incorporated, was granted in 1799 ; and powers were given by it to carry on the business of loaning money for the period of twenty years. No bonus was required by the legislature, nor was there any reservation of a right to levy a tax or an excise upon the company. The effect of this charter was, to give to the individuals who applied for it, and their sue *223 cessors, a right to act as a body corporate and politic in the management of their common funds, under the restrictions and regulations provided in the charter.
They now contend, that, as the privilege was freely given to them by the government for a limited period, they cannot be subject to any tax or tribute to the government during the existence of the charter, because the legislature is, by * the Constitu- [ *255] tian, limited in its powers of taxation, to an equal and proportionate assessment upon all the property in the Commonwealth, and that it has not the power to select any individuals or company, or any specific object of property, and demand a tax of them, separate and distinct from such tax as might result from its equal and proportionate share of such taxes as should be required of all other individuals, companies, or property, within the Commonwealth.
The words of the Constitution, from which the authority of the legislature to impose taxes and to obtain a revenue is derived, are, “ to impose and levy proportionate and reasonable assessments, rates, and taxes upon all the inhabitants of, and persons resident and estates lying within, the Commonwealth ; and also to impose and levy reasonable duties and excises upon any produce, goods, wares, and merchandise, and commodities whatsoever, brought into, produced, manufactured, or being within the same.”
Under the first branch of this power, namely, that of imposing and levying rates and taxes, the requisition upon the banks cannot be justified ; for those taxes must be proportional upon all the inhabitants of, and persons resident and estates lying within, the Commonwealth. The exercise of this power requires an estimate or valuation of all the property in the Commonwealth ; and then an assessment upon each individual, according to his proportion of that property. To select any individual or company, or any specific article of property, and assess them by themselves, would be a violation of this provision of the Constitution.
But there are other sources of emolument and profit, not strictly called property, but which are rather to be considered as the means of acquiring property, from which a reasonable revenue may be exacted by the legislature, within the fair meaning of the other branches of the power above recited. The exercise of this power is called the imposing or levying of duties and excises ; and the subjects upon which they are to be levied are produce, goods, wares, merchandise, and commodities, brought into, produced, manufactured, * or being within the State. The former provision [ * 256] seems to be intended as a contribution of the individual citizens, in proportion to the property, whether real or personal, which they are respectively worth. The latter is a tax upon the *224 articles, whoever may be the owner, or into whose hands soever they may go ; operating as compensation for the privilege of producing, manufacturing, or bringing them within the State ; and the sum which each individual may pay of this latter species of tax, may not be in proportion to his property ; but will be only in proportion to the quantity of such particular article so taxed, as may be consumed by him, or used by him, in the way of his business and employment.
The term excise is of very general signification, meaning tribute, custom, tax, tallage, or assessment. It is limited, in our Constitution, as to its operation, to produce, goods, wares, merchandise, and commodities. This last word will perhaps embrace every thing, which may be a subject of taxation, and has been applied by our legislature, from the earliest practice under the Constitution, to the privilege of using particular branches of business or employment, as, the business of an auctioneer, of an attorney, of a tavern-keeper, of a retailer of spirituous liquors, &c.
It must have been under this general term, commodity, which sig nifies convenience, privilege, profit, and gains, as well as goods and wares, which are only its vulgar signification, that the legislature assumed the right, which has been uniformly, and without complaint, exercised for thirty years, of exacting a sum of money from attar neys, and barristers at law, vendue masters, tavern-keepers, and re toilers. For every man has a natural right to exercise either of these employments free of tribute, as much as a husbandman or mechanic has to use his particular calling. The money required of them is not a proportional tax ; nor is it an excise or duty upon produce, goods, wares, or merchandise. It is a commodity, convenience, or privilege, which the legislature has, by contemporaneous construction of the Constitution, assumed a right to sell at a reasonable price ; [*257] and, by * parity of reason, it may impose the same conditions upon every other employment or handicraft.
It is true, that it may be unsafe, generally, to infer from the actual use of power by a government its original right to exercise that power ; and, certainly, no continuance of usurpation upon the rights of a citizen, however long, can deprive him of those rights. But in questions touching the powers of government under a written constitution, not affecting the essential rights of the citizen, the practice and usage of successive legislatures, from the time the government began, when its powers, as well as the rights of the subject, were well understood, and when there was a general disposition to keep all the departments within their prescribed sphere, down to the present time, may furnish strong grounds for explanation of parts which are obscure, or not perfectly explicit.
According to the construction of the Constitution, there can be no doubt that the legislature might as well exact a fee or tribute from *225 brokers, factors, or commission merchants, for the privilege of transacting their business, as from auctioneers, or. innholders, or retailers, or attorneys. It will, undoubtedly, be the policy of a wise legislature, not to multiply burdens of this sort ; but we speak only of their-power, presuming that it will never be exercised but for wise or necessary purposes.
If it should be true that this right exists with respect to individuals, then the only remaining question is, whether, when a number of individuals have associated for the purpose, of carrying on the business of brokerage, money-lending, or factorage, more conveniently, extensively, and securely, and for that purpose have obtained a license or charter from the government, they are exempt from-a liability which would attach to them severally as individuals. Did the legislature, when it incorporated the plaintiffs, relinquish the right of laying an excise or duty upon the business which they should transact during the continuance of the charter of incorporation ? There is no express waiver or relinquishment, nor is there any strong implication of one. * The object of their charter is to en- [* 258 ] able them, m a body^ to conduct their business as an individual, to make contracts, and to enforce them as such, avoiding the inconveniences of a copartnership. This is all that is asked for by the company, and all that is given by the charter. It is a privilege to manage their business, and not an exemption from duty.
Suppose that heretofore the legislature should have enacted that no person should keep a public house, or retail spirituous liquors, without a license from some authority by them designated, but without exacting any tax or duty therefor ; could it be contended that afterwards they were precluded from establishing a tax or excise upon the business thus permitted to be exercised ?
Every man has the implied permission of the government to carry on any lawful business ; and there is no difference in the right, between those which require a license and those which do not, except in the prohibition, either express or implied, where a license is required. So that to lay a duty or excise upon branches of business which exist by license is no infringement of any privilege conveyed by such license.
The late law of the United States, requiring the use of a license, and establishing a tax to the government, seems to be predicated upon the same principles. For Congress has seen fit to require fifty per cent, from tavern keepers and retailers, in addition to the sum originally paid for the license, within the term for which it was granted.
Taxes of this sort must undoubtedly be equal ; that is, they must operate upon all persons who exercise the employment which is so taxed. A tax upon one particular moneyed capital would unquestion *226 ably be contrary to the principles of justice, and could not be supported ; but a tax upon all banks we think justifiable upon the grounds we have stated.

Plaintiffs nonsuit.

[Providence Bank vs. Billings, 4 Pet. 514. — Judson vs. State, Minot, 150. — Ed.]