CONNECTICUT MUTUAL LIFE INSURANCE COMPANY *vs.* COMMONWEALTH.

NEW YORK LIFE INSURANCE COMPANY *vs.* DANIEL A. GLEASON & another.

Suffolk.   March 21, 22. — June 29, 1882.   ENDICOTT & C. ALLEN, JJ., absent.

The St. of 1880, *c.* 227, imposing upon every corporation and association engaged within the Commonwealth in the business of life insurance an annual excise tax, " to be determined by assessment of the same upon a valuation equal to the aggregate net value of all policies in force on the thirty-first day of December then next preceding, issued or assumed by such corporation or association, and held by residents of the Commonwealth, at the rate of one half of one per centum per annum," is constitutional.

MORTON, C. J.   The only question argued in these cases is as to the constitutionality of the St. of 1880, *c.* 227, which provides in the first section that " every corporation and association engaged within this Commonwealth, by its officers or by agents as defined by chapter one hundred and fourteen of the acts of the year eighteen hundred and sixty-four, in the business of life insurance, whether incorporated by authority of this Commonwealth or otherwise, shall annually pay an excise tax of an amount to be determined by assessment of the same upon a valuation equal to the aggregate net value of all policies in force on the thirty-first day of December then next preceding, issued or assumed by such corporation or association, and held by residents of the Commonwealth, at the rate of one half of one per centum per annum."

The power of the Legislature to impose taxes, duties and excises is not an unrestricted one, but is derived from and limited

by the Constitution, which provides that "full power and authority are hereby given and granted to the said General Court" "to impose and levy proportional and reasonable assessments, rates and taxes, upon all the inhabitants of, and persons resident, and estates lying, within the said Commonwealth; and also to impose and levy reasonable duties and excises upon any produce, goods, wares, merchandise and commodities whatsoever, brought into, produced, manufactured or being within the same." Const. Mass. *c.* 1, art. 4.

It is clear that the tax in question cannot be justified as a tax on property under the first clause above cited. That clause provides that all taxes levied under its authority shall be "proportional and reasonable." It forbids the imposition of a tax upon one class of property at a different rate from that which is applied to other classes. The assessment which is the subject of controversy is not laid according to any rule of proportion, but is laid upon the corporations specified in the act, without any reference to the whole amount required to be raised for public purposes, or to the actual value of the property of the corporations, or to the whole amount of property in the Commonwealth liable to be assessed for the public service. *Oliver* v. *Washington Mills*, 11 Allen, 268. *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298. *Cheshire* v. *County Commissioners*, 118 Mass. 386.

It is equally clear that the Legislature in laying this assessment did not intend to exercise the power conferred by this clause of imposing "proportional and reasonable" taxes upon property. The statute expressly declares it to be "an excise tax;" it is not based upon the actual property of the corporations named, or upon any proportion which it bears to other property; the statute requires returns from each corporation, not of its property, but of the aggregate net value of all its policies held by residents of the Commonwealth, for the purpose of furnishing a standard or measure of a special tax or excise upon the franchises or privileges of the corporation. The only question, therefore, is whether this tax can be justified under the other clause of the Constitution, authorizing the General Court "to impose and levy reasonable duties and excises upon any produce, goods, wares, merchandise and commodities whatsoever," within the Commonwealth.

It has been uniformly held, since the formation of our government, that, under this provision of the Constitution, the Legislature has the power to impose an excise upon any business or calling exercised in the Commonwealth, and upon any franchise or privilege conferred by or exercised within the Commonwealth. *Portland Bank* v. *Apthorp*, 12 Mass. 252. *Commonwealth* v. *People's Five Cents Savings Bank*, 5 Allen, 428.

The power to impose an excise upon corporations or associations engaged within this Commonwealth in the business of life insurance, whether incorporated here or incorporated elsewhere and allowed by comity to carry on business here, cannot now be doubted. The only limitation of the power is that contained in the constitutional provision, that the duty or excise shall be "reasonable."

The power to determine what callings, franchises or privileges, or, to use the language of the Constitution, "commodities," shall be subjected to an excise, and the amount of such excise, belongs exclusively to the Legislature. The provision that it must be "reasonable" was not designed to give to the judicial department the right to revise the decisions of the Legislature as to the policy and expediency of an excise. Great latitude of discretion is given to the Legislature in determining, not only what "commodity" shall be subjected to excise, but also the amount of the excise and the standard or measure to be adopted as the foundation of the proposed excise. The court cannot declare a tax or excise illegal and void, as being unreasonable, unless it is unequal, or plainly and grossly oppressive, and contrary to common right.

Judged by these principles, the excise in controversy does not seem to us to be unreasonable and illegal. It is not unequal, but it operates alike upon all corporations or associations which exercise the franchise or function which is intended to be taxed. The mode of fixing the amount of the tax, by an assessment upon the aggregate of the net values of all the policies held by residents of the Commonwealth, is not unequal or oppressive and unreasonable.

If the whole of the business of life insurance consisted in making contracts of insurance and in paying losses, and its

franchises or functions were exhausted by these duties, the argument would be strong that this tax is unequal and unreasonable. It is not measured at all by the number of policies issued in the year for which the tax is laid. Some corporations making many contracts would not have to pay any tax, and some making fewer contracts would have to pay a large tax. As a mere excise upon the capacity or function of making contracts of insurance, its practical operation would be partial and unequal. But this is not the only important function exercised by life insurance corporations. By the growth and course of the business, and by legislation, another important function has been engrafted upon the system, that of receiving, holding, investing and managing property for the benefit of the policy holders.

The simplest form of carrying on the business of life insurance would be for the company to charge the policy holder each year with the sum which it costs to insure him for that year, which can be ascertained with reasonable certainty by the aid of the accepted tables of mortality. In such case, the relation between the parties would be merely that of insurer and insured. But the general practice of insurers is, instead of charging such sums, which would increase from year to year, to ascertain what these sums would average each year throughout an average life, and to charge each year such average sum. The necessary effect of this practice is that the insured, during the earlier years of the running of his policy, pays more than it costs to insure him, and thus the company accumulates from year to year a fund which in equity is held for the benefit of the policy holders. It is this feature of the business which gives existence to " net values " within the meaning of our statutes ; the " net value " of a policy being represented by a sum which, with compound interest at the rate of four per cent per annum and with the addition of future net premiums, will provide for the payment of the policy when it matures, according to the " combined experience " or " actuaries' " table of mortality. St. 1866, c. 33. The fund thus accumulated is not regarded by our laws as the absolute property of the company, but is held by it as a quasi trustee, for the benefit of the policy holders. It has the legal title, as is the case with all trustees, but holds the property in the exercise of a franchise or function which permits it to receive, invest and

manage it for the benefit of others. If the insured violates his contract and forfeits his policy, the company cannot treat the accumulation upon his policy as its property, but holds it for his benefit.

.Companies doing business upon this plan thus resemble savings banks, exercising the franchise or function of receiving, investing and managing the money of numerous policy holders. It is this franchise or function which is taxed by the statute we are considering. The words " every corporation and association engaged in the business of life insurance," do not indicate that the franchise intended to be taxed was merely the function of making contracts of insurance, but were intended to designate a class, any member of which would come within the statute, if it exercised the function which is made the subject of the excise. The essential part of the statute, assessing the excise upon the aggregate net values, shows that the Legislature did not intend that it should apply to " coöperative associations," or to any other insurance companies which conduct their business so as not to create any " net values."

The object of the Legislature was, without specifying the various forms of policies, such as " limited," " endowment " or " tontine," to impose an excise upon such associations as by virtue of their franchises exercise the function of receiving from many citizens of the Commonwealth money as trustees to invest and manage for them. This is an important function, capacity or privilege, engrafted upon and a part of the franchise exercised within this Commonwealth, upon which the Commonwealth has the constitutional power to levy a reasonable excise.

Regarding the statute as intended to tax the franchise or privilege of holding and managing the property of others, the method adopted to ascertain the value of this privilege is not unreasonable. The net value of a policy represents approximately the amounts of the payments which have been made by the holder in excess of the yearly cost of insurance, and thus the aggregate net values which furnish the basis of this tax represent approximately the amount of money of citizens of this Commonwealth, which the company has in its hands and which it is investing and managing by virtue of its franchise. It does

not seem to be an unfair measure of the value of the franchise which is taxed.

Excises similar to the one in controversy have been upheld by the court in the cases we have before cited. Thus an excise upon banks based upon the par value of the capital stock, one upon mining corporations with the same basis, one upon savings banks based upon the amount of deposits, one upon manufacturing corporations based upon the excess of the market value of the stock over the value of the real estate and machinery taxed in the place where they are situated, have been held to be within the legislative power to levy reasonable excises, and to be valid.

The plaintiffs in the cases at bar contend that this tax, though in form an excise, is covertly, but really and essentially, a tax upon the property of the policy holders held by the companies; and also that it is a tax based upon the debts of the companies, which is unreasonable.

We are not able to see the force of either of these arguments. Every excise necessarily must finally fall upon and be paid by property, and so may be indirectly a tax upon property. But, as we have before said, the Legislature clearly intended this as an excise, and not as a tax on property. It is not in terms laid upon the property or upon the policy holders; it is the corporation which is to pay it, and which is exposed to the penalties for non-payment. We must hold it to be what the Legislature has declared it to be, an excise upon a franchise or privilege of the corporation. It is true that the aggregate net value of outstanding policies represents debts or liabilities of the companies. So does the capital stock of a corporation, and, what is more nearly analogous to these cases, so do the deposits of a savings bank. But this is immaterial, if they also furnish a fair basis by which to estimate the value of the franchise or privilege of the corporation, which the Legislature in the exercise of its discretion desires to subject to an excise. The record and the arguments of counsel present details of the operation of this statute, which is claimed to work hardships upon the insurers; but we do not discuss them, because we have nothing to do with the policy or expediency of the law, or with the question whether it is satisfactory to insurers or insured. These are matters for legislative

judgment and discretion. Upon the whole case, judging of this statute by the principles of constitutional construction heretofore adopted by the court, we are of opinion that it is an enactment within the power conferred by the Constitution upon the Legislature to levy reasonable excises, and is therefore valid, both as to domestic corporations, which derive their authority to exercise the franchise taxed by grant from the State, and as to foreign corporations, which are permitted to exercise the same franchise here by the comity of the State, upon such conditions as it sees fit to prescribe. *Judgment for the defendants.*

*W. G. Russell & J. Fox,* for the plaintiff in the first case.

*J. C. Ropes & W. C. Loring,* for the plaintiff in the second case.

*G. Marston,* Attorney General, (*C. H. Barrows,* Assistant Attorney General, with him,) for the defendants.