DANIEL A. GLEASON *vs.* GORDON McKAY.

Suffolk. Nov. 20, 1882. — March 5, 1883. DEVENS & HOLMES, JJ., absent.

The St. of 1878, c. 275, extending the provisions of the St. of 1865, c. 283, so that they shall apply "so far as applicable, to companies, copartnerships and other associations having a location or place of business within this Commonwealth, in which the beneficial interest is held in shares which are assignable without consent of the other associates specifically authorizing such transfer;" and providing that the tax provided for in the St. of 1865, c. 283, "shall be paid by such company, copartnership or association upon the aggregate value of the shares of said capital stock, in the manner provided in said chapter for taxes upon corporations," so far as it applies to a partnership in which, by agreement of the partners, the interest of each member may be transferred without the special assent of the other members, is unconstitutional.

CONTRACT by the treasurer of the Commonwealth against the trustee of the McKay Sewing Machine Association, to recover a tax assessed upon said association for the year 1879, in pursuance of the St. of 1878, c. 275. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, on agreed facts, in substance as follows:

Previously to May 10, 1866, Gordon McKay had acquired, by invention, assignment or license, interests in letters patent of the United States for improvements in machinery for sewing the soles of boots and shoes to the vamps, and had been carrying on the business of manufacturing machines under these letters patent, and licensing shoe manufacturers to use them. From the proceeds of the business, he had purchased land in Lawrence, and built a machine-shop on it for the manufacture of such machines, and accumulated some personal property. The legal title in the business and in all the property, both real and personal, including the interests in the letters patent, was and has continued to be in himself; but other persons were and are equitably interested in various proportions.

On May 10, 1866, McKay executed an instrument under seal,* in which, after reciting the foregoing facts, he declared that he had held and should continue to hold the business and property

---

* A copy of this instrument was annexed to the statement of facts; its material provisions are recited in 105 Mass. 521, 522.

in trust for the benefit of all persons who were or might become interested therein, upon the terms and conditions therein set forth.

Upon the execution of this instrument by McKay, all the persons then interested in the property or business signed an agreement in the following terms : " In consideration that the said Gordon McKay has agreed and does hereby bind himself and agree to deliver to each and every party having an interest in the property set forth in the foregoing certificate and declaration of trust, a certificate and declaration similar to the foregoing, expressing the several interests of each party, in case all of the persons interested in said property shall sign this agreement, we do hereby severally bind ourselves and agree to receive from said McKay such certificate and declaration of trust, as the sole evidence of our respective interests in the above-described property ; and upon the receipt thereof, any other certificate or evidence of title which we may hold to said property shall become cancelled and void, and the same shall be surrendered to him, the said McKay."

Each person then interested received a certificate, signed by the trustee, certifying that he was the owner of a certain number of shares " in the property of the McKay Sewing Machine Association," and that the " shares are transferable by an assignment in writing on this certificate, and a surrender of this certificate to the trustee."

After the execution of the papers, and issue of the certificates, the shareholders, on May 28, 1866, held a meeting, as provided for by the declaration of trust, and chose an executive committee and adopted by-laws for the regulation of the business of the association.

Since said date, the business of the association has been conducted by its executive committee under the provisions of said declaration and by-laws, McKay holding the legal title of all its property as trustee, under said declaration, the title of the property never having passed from him. The place of business of the association is and always has been in Boston, except that it has a factory in Lawrence for the manufacture of machines and tools. Except its machine-shop in Lawrence, and the tools and machinery connected therewith, the property of the association

and the value of its shares consist chiefly of its interests in the letters patent.

Its income is chiefly derived from license fees received from licensees of its machines, and the net amount of this income is divided from time to time, generally quarterly, among its members, in proportion to their respective shares or interests.

Its machines are all leased under a form of lease, the legal title to them remaining in McKay as trustee. On May 1, 1879, there were 1216 of these machines in the hands of licensees, distributed throughout the United States; and the interest of McKay, trustee, and of said association therein, exclusive of the interest of the lessees, was taxed to said trustee for that year, in Boston, at the rate of $1 per machine. The total value of the machines at that date, May 1, 1879, was, on an average, $100 for each machine, which had been paid by each lessee on the delivery of the machine to him. By a provision in all of said leases, the lessee upon the termination of the lease, if he has complied with its terms, is entitled to the machine absolutely, upon the payment of $1 to the trustee.

Whenever a member sells his shares, or any of them, new certificates are issued to the purchaser, and such purchasers thereupon become members of the association. Said shares are frequently sold, and such sales reported at auction sales in Boston, and are subject of transfer upon assignment of certificates of shares, as set forth in said certificates; and, upon such assignment, the assignee is entitled to receive new certificates, and to demand and receive of the association his proportionate share of the net profits of the association, under said declaration and by-laws. Such shares are held by the person holding the certificate thereof, free from the control of any other person, and are subject to no restrictions or conditions whatever, except such as are set forth in said certificate and declaration of trust.

McKay, as trustee of said association, was taxed for its real estate, machinery and tools in Lawrence for the year 1879, as well as in all previous years, and the tax was duly paid; said real estate was assessed at $63,500, and said machinery and tools at $71,216. He was also taxed in said year, as in all previous years, in Boston for the personal property held by him for said association, consisting of office furniture, money on hand, book

accounts and interest in said machines in the hands of licensees, all valued at $52,291.99, and upon which he duly paid the assessed tax, amounting to $653.75. This valuation did not include the interests in the letters patent held by him, it being contended by the trustee that letters patent of the United States were not subject to taxation.

The tax sought to be recovered in this action, $14,253.33 was assessed upon the aggregate value of the shares of the association on May 1, 1879, as ascertained by the tax commissioner in pursuance of the provisions of the St. of 1865, c. 283, after deducting therefrom only the value of said real estate, machinery and tools taxed at Lawrence, said assessed valuation being $1,115,284.

Upon notice of said taxation, the said trustee, in behalf of the association, duly applied to the board of appeal for a correction of said tax, upon the ground that said valuation and assessment included the interest in said letters patent, and also the personal property taxed in Boston, as it did in fact, at the same time claiming that no tax whatever was assessable against said trustee or association. Upon the hearing, the foregoing facts appeared; but the board of appeal declined to reduce or alter the amount of said valuation or assessment.

*C. H. Barrows*, Assistant Attorney General, for the plaintiff. The St. of 1878, c. 275, may be declared constitutional:

First. As imposing an excise on the franchise of an unincorporated association, the franchise belonging to the association as an aggregate. Unincorporated entities, as distinct from partnerships, have long been recognized. Laws of Alfred (Thorpe's Anc. Laws & Inst.) 27, 28. Smith on English Gilds, *passim*. Class Tax Act, 1782. Rev. Sts. c. 7, § 46. *Oliver* v. *Liverpool & London Ins. Co.* 100 Mass. 531, 540. *Hill* v. *Boston*, 122 Mass. 344, 349.

Second. As imposing an excise on the privilege or commodity of associating in a peculiar way, being the privilege of the individual members of the association. Any class of legal rights may be selected for taxation, whether such rights are conferred by statute or by common law; and their enforcement through the courts is a privilege which may be the subject of excise. A tax on traders' licenses rests on this ground. *Portland Bank*

v. *Apthorp*, 12 Mass. 252. *Tarde* v. *Benseman*, 31 Tex. 277. *Young* v. *Governor*, 11 Humph. 147. A tax similar to that in the case at bar might be laid on the peculiar form of partnership described in the Pub. Sts. *c.* 75.

Third. As imposing a tax on a newly declared form of property.

Fourth. As imposing a tax on property that is proportional in the sense intended by the Constitution.

*E. Merwin*, for the defendant.

MORTON, C. J. The principal question in this case is whether the St. of 1878, *c.* 275, as applied to the defendant, is constitutional. The first section of the statute provides that " Chapter two hundred and eighty-three of the acts of the year one thousand eight hundred and sixty-five, and the acts in amendment thereof, are hereby extended to apply, so far as applicable, to companies, copartnerships and other associations having a location or place of business within this Commonwealth, in which the beneficial interest is held in shares which are assignable without consent of the other associates specifically authorizing such transfer. And the tax provided for in said chapter two hundred and eighty-three shall be paid by such company, copartnership or association upon the aggregate value of the shares of said capital stock, in the manner provided in said chapter for taxes upon corporations."

The power of taxation, using the word in its generic sense as including all rates and impositions laid or levied upon the people, is conferred upon the Legislature by the Constitution, and is to be held and exercised subject to the limitations imposed by the Constitution. *Oliver* v. *Washington Mills*, 11 Allen, 268. The Legislature is given the power " to impose and levy proportional and reasonable assessments, rates and taxes, upon all the inhabitants of, and persons resident, and estates lying, within the said Commonwealth," and also power " to impose, and levy, reasonable duties and excises, upon any produce, goods, wares, merchandise, and commodities, whatsoever, brought into, produced, manufactured, or being within the same." Const. Mass. *c.* 1, art. 4.

It is clear that the statute in question was not intended to lay a tax upon property within the first of these clauses. It

does not purport to do this. It merely extends to certain co-partnerships and associations the provisions of the St. of 1865, c. 283, which chapter has been held to levy an excise upon corporate franchises, and not to lay a tax on property, and which chapter can be sustained as constitutional only upon the ground that it levies an excise. *Murray* v. *Berkshire Ins. Co.* 104 Mass. 586. *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298. Regarded as a tax on property, the tax we are considering would be invalid because not proportional; it would be an imposition upon certain property at a rate different from that to which other property in the Commonwealth is subject. But, as we have said, it does not purport to be a tax on property. In levying an imposition under this statute, no inquiry is made as to what property liable to taxation any copartnership, or other association which comes within its terms, has. Such property remains liable to taxation under the general laws. This imposition is based "upon the aggregate value of the shares of said capital stock." Such shares, if they can be said to be property, are not the property of the copartnership or association which is taxed, but of the individual partners or shareholders. It is very clear that this was intended as an excise upon some franchises or privileges sought to be held by the copartnerships or associations in supposed analogy to the franchises of corporations. And the question is whether this imposition can be upheld as such excise within the second clause of the Constitution, cited above. In this clause, there are two limitations upon the power of the Legislature in imposing excises. They must be reasonable, and they must be excises upon some produce, goods, wares, merchandise or commodities, brought into, produced, manufactured, or being within the Commonwealth.

It will not be seriously contended that the privileges or rights which are taxed by this statute can be properly described as either produce, goods, wares or merchandise. Do they fairly come within the term "commodities," in the sense in which it is used in the Constitution? Ever since the adoption of the Constitution, the Legislature in its practice, and this court in its adjudications, have given a very broad and extensive meaning to this term. It has been repeatedly held that corporate franchises enjoyed by grant from the government are commodities, and

subject to an excise. So with corporate franchises granted by a foreign government, which by comity are permitted to be exercised within this Commonwealth. So where the Legislature has thought, upon considerations of public policy, that certain occupations or callings, of a public or quasi public character, should be carried on under governmental regulation, it has been usual to impose a reasonable fee for a license. *Portland Bank* v. *Apthorp*, 12 Mass. 252. *Commonwealth* v. *People's Five Cents Savings Bank,* 5 Allen, 428. *Commonwealth* v. *Hamilton Manuf. Co. ubi supra. Commonwealth* v. *Cary Improvement Co.* 98 Mass. 19. *Connecticut Ins. Co.* v. *Commonwealth*, 133 Mass. 161.

This imposition is clearly not in the nature of a license fee, but is an excise upon a franchise or privilege. The right to levy excises upon franchises has never been extended further than to corporate franchises specially granted by the government, or enjoyed and exercised by its permission.

The defendant in this case is not a corporation. It is merely a partnership, with all the incidents and responsibilities of a partnership. The firm property is taxable at its business domicil. *Hoadley* v. *County Commissioners*, 105 Mass. 519. It enjoys no franchises conferred upon it by the Legislature. It does not ask for or enjoy any corporate or special privileges. It has constituted its partnership under its common law rights and such legal agreements as it chooses to make. The peculiar feature that the interest of each member may be transferred without the special assent of the other members, is created by agreement of the partners under their natural rights at common law. We do not see how this peculiar feature can be called a commodity, subject to a special excise, any more than the agreement of copartnership itself, or any clause or part of it, or any other agreement, right or mode of transacting any business, can be called a commodity, and so liable to taxation at the will of the Legislature.

If this tax can be upheld, it seems to us that the necessary result will be that the Legislature has the power to select any business, occupation or calling carried on, or any natural right enjoyed, under the protection of our laws, and impose upon it at its will a special tax or excise. This would be extending the meaning of the word " commodities " beyond any reasonable

limits. Its effect would be to break down the limitations which the Constitution intended to impose upon the power of the Legislature, for the purpose of securing the end that all sums necessary for the defence and support of the government should as far as practicable be raised by the equal taxation of the people.

We are therefore of opinion that the St. of 1878, c. 275, so far as it applies to the defendant, is unconstitutional.

*Judgment for the defendant.*