WILLIAM MINOT, JR. & others, executors, vs. ELISA C.
WINTHROP & others.

Norfolk.    May 14, 1894. — October 17, 1894.

ANNA O. WILLIAMS vs. CHARLES P. BOWDITCH, executor.

Suffolk.    May 14, 1894. — October 17, 1894.

SIMEON N. WEST & another, executors, vs. HENRY M.
PHILLIPS, Treasurer of the Commonwealth, & others.

Bristol.    May 14, 1894. — October 17, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Tax on Collateral Legacies and Successions — Constitutional Law — Tenant
for Life and Remainderman — Annuity — Exemption of Charitable Socie-
ties, etc.*

The St. of 1891, c. 425, entitled "An Act imposing a tax on collateral legacies and
successions," is constitutional, as the privilege of transmitting and receiving by
will or descent property on the death of the owner is a "commodity" within
the meaning of this word in the Constitution of Massachusetts, c. 1, § 1, art. 4,
and an excise may be laid upon it; and the objections that the tax is unequal
because not imposed upon all estates and upon all heirs, devisees, legatees, and
distributees, and is unreasonable on account of the exemption in the proviso of
the first section, "that no estate shall be subject to the provisions of this act
unless the value of the same, after the payment of all debts, shall exceed the
sum of ten thousand dollars," are not well founded.    LATHROP, J. dissenting.

The provisions of § 2 of St. 1891, c. 425, entitled "An Act imposing a tax on col-
lateral legacies and successions," to the effect that where property is bequeathed
to a direct heir for life or for a term of years, and the remainder to a collateral
heir or to a stranger to the blood, the value of the prior estate shall be appraised
and deducted from the appraised value of the property, and the remainder shall
be subject to a specified tax, contemplate that the tax shall be computed and
deducted from the principal sum and paid over to the Treasurer of the Common-
wealth, under § 4, "at the expiration of two years from the date" of the execu-
tor's bond, or when the legacy is paid, if paid within the two years; and the
amount of the loss of the income of the tenant for life or for years caused by
the diminution of the principal of the fund is not to be made up to him out of
the principal or out of the general funds of the estate.

The St. 1891, c. 425, imposing a tax on collateral legacies and successions, con-
templates in the case of an annuity that the tax is to be paid out of the annuity as
soon as the annuity becomes payable, and at the time when payments on account
of it are made.

The exemption under St. 1891, c. 425, § 1, of " charitable, educational, or religious societies or institutions, the property of which is exempt by law from taxation," from the payment of the tax imposed by that statute, is confined to societies the property of which is exempt from taxation by the laws of this Commonwealth.

THE FIRST CASE is an appeal by Elisa C. Winthrop, Julia G. Irving, the Congregational Church and the St. John's Episcopal Church of Canandaigua in the State of New York, from a decree of the Probate Court for the County of Norfolk upon the constitutionality of St. 1891, c. 425, and its application to certain legacies given the appellants by the will of Cornelia A. G. Winthrop. Hearing before *Lathrop*, J., who reported the case for the consideration of the full court. The facts appear in the opinion.

THE SECOND CASE is an action of contract against the executor of the will of Elizabeth B. Bowditch, to recover the balance of a legacy of $6,000 given to the plaintiff by the will. The declaration alleged that the defendant had paid the plaintiff $5,700, and, without requiring any bond from the plaintiff, had refused to pay the remaining $300, solely upon the ground that he had the right to withhold that sum and pay it as a tax to the Treasurer of the Commonwealth, under St. 1891, c. 425. The declaration further alleged that the statute was unconstitutional and void. In the Superior Court the defendant demurred to the declaration, on the grounds that no legal cause of action was set forth therein and that St. 1891, c. 425, was constitutional. The Superior Court sustained the demurrer ; judgment was ordered for the defendant, and the plaintiff appealed to this court.

THE THIRD CASE is an appeal by Charles F. Folger and others, legatees under the will of Richard Curtis, from a decree of the Probate Court for the County of Bristol to the effect that St. 1891, c. 425, is constitutional, and that the testator's estate, by virtue of its provisions, is subject to a tax payable to the Commonwealth. Hearing before *Knowlton*, J., who reserved the case for the determination of the full court. The facts appear in the opinion.

*F. Rackemann*, for the executors in the first case, read the papers.

*W. G. Russell & J. Fox,* for the plaintiffs in the first two cases.

*A. M. Goodspeed,* for Charles F. Folger and others, submitted the case on a brief.

*H. M. Knowlton,* Attorney General, *& G. C. Travis,* First Assistant Attorney General, for the Treasurer of the Commonwealth.

FIELD, C. J.  These cases make it necessary for us to determine the constitutionality of St. 1891, c. 425.  The objections urged against this statute are that the right of succession to property on the death of the owner is a necessary incident of property which is protected by the Constitution of Massachusetts ; that a tax upon such succession is in effect a tax upon the property, and is subject to the limitations put upon a tax upon estates by the Constitution ; that if such a tax is not a tax upon property, but an excise upon the right of succession, this right cannot be considered as " goods, wares, merchandise, and commodities," within the meaning of these words in the Constitution ; and that even if the right can be considered as a commodity, the tax imposed by the statute is unreasonable, because the statute is unequal in its operation, and makes arbitrary distinctions between those persons and estates which are and those which are not subject to its provisions.  The Attorney General concedes that the tax imposed by the statute is invalid if it is a tax on property or estates.  He contends that the tax is an excise ; that the succession to property on the death of the owner is a privilege created by law, and a commodity within the meaning of the Constitution, and that as an excise the tax is reasonable.

St. 1891, c. 425, purports to be a statute imposing a tax, and we think it apparent that the Legislature, in passing it, intended to act under the power granted to the General Court by the Constitution, to impose and levy taxes.  The Constitution, c. 1, § 1, art. 4, gives to the General Court full power " to impose and levy proportional and reasonable assessments, rates, and taxes upon all the inhabitants of and persons resident and estates lying within the said Commonwealth ; and also to impose and levy reasonable duties and excises upon any produce, goods, wares, merchandise, and commodities whatsoever, brought into, produced, manufactured, or being within the same ; to be

issued and disposed of by warrant, under the hand of the Governor of this Commonwealth for the time being, with the advice and consent of the Council, for the public service, in the necessary defence and support of the government of the said Commonwealth, and the protection and preservation of the subjects thereof, according to such acts as are or shall be in force within the same." The Constitution also provides as follows: "And while the public charges of government, or any part thereof, shall be assessed on polls and estates, in the manner that has hitherto been practised, in order that such assessments may be made with equality, there shall be a valuation of estates within the Commonwealth taken anew once in every ten years at least, and as much oftener as the General Court shall order."

In the Constitutional Convention the committee appointed to prepare a Declaration of Rights and a Frame of a Constitution reported a draft of a Constitution which gave to the General Court in the matter of taxation only the authority " to impose and levy proportional and reasonable assessments, rates, and taxes upon the persons of all the inhabitants of and residents within the said Commonwealth, and upon all estates within the same, to be issued and disposed of by warrant," etc. This was in effect the same as in the Province Charter. This draft also contained the following provision: " And that public assessments may be made with equality, there shall be a valuation of estates within the Commonwealth taken anew once in every ten years at the least." Journal of Convention, 1779–80, p. 197, c. 2, § 1, art. 3, of the draft. In the Convention the paragraphs above quoted were referred to committees, who reported them in the form in which they stand in the Constitution. Ibid. pp. 61–63. Under the Province Charter the General Court had laid imposts and excises in addition to taxes and assessments upon the persons and estates of the inhabitants, but it is evident that the framers of the Constitution intended that the authority to do this should be express. But neither in the Province nor in England had there been a tax on legacies and inheritances at the time when the Constitution was adopted, although it was a form of taxation which had been used on the Continent of Europe. See The Inheritance Tax, by Max West, Vol. 4, No. 2, of the Studies in History, Economics, and Public Law of Colum-

bia College; Smith's Wealth of Nations, Book 5, c. 2; Dos Passos on Collateral Inheritance Taxes; Hanson's Probate, Legacy, and Succession Duties.

The descent or devolution of property on the death of the owner in England and in this country has always been regulated by law. We have no occasion in these cases to consider whether the Legislature has the power to make the Commonwealth the universal legatee or successor of all the property of all its inhabitants when they die, for the purposes not only of paying the public charges, but also of distributing the property according to its will among the living inhabitants, or for the purpose of abolishing private property altogether. We assume that under the Constitution this cannot be done, either directly or indirectly; that the Legislature cannot so far restrict the right to transmit property by will or by descent as to amount to an appropriation of property generally; that it cannot impose a tax which shall be equivalent, or almost equivalent, to the value of the property, and cannot so limit the persons who can take as heirs, devisees, distributees, or legatees that the great mass of all the property of the inhabitants must become vested in the Commonwealth by escheat. The State can take property by taxation only for the public service, and we assume that its right to take property, if any exists, by regulating the distribution of it on the death of the owner, is limited in the same manner, and that this right must be exercised in a reasonable way.

Under our system of law the right to make a will or testament, and the right to transmit or take property by descent, are now mainly, if not wholly, regulated by statute. In *Mager* v. *Grima*, 8 How. 490, 493, the Supreme Court of the United States say of a statute of Louisiana: " Now the law in question is nothing more than an exercise of the power which every State and sovereignty possesses, of regulating the manner and term upon which property real or personal within its dominion may be transmitted by last will and testament, or by inheritance; and of prescribing who shall and who shall not be capable of taking it." In *Brettun* v. *Fox*, 100 Mass. 234, this court say: " The objection of the respondent that the statute could not constitutionally limit the owner's power of testamentary disposition is equally novel and unfounded. The power to dispose of property by will

is neither a natural nor a constitutional right, but depends wholly upon statute, and may be conferred, taken away, or limited and regulated, in whole or in part, by the Legislature ; and no exercise of legislative authority in this respect is more usual than that which secures to a widow a certain share in the estate of her husband." See *Lavery* v. *Egan*, 143 Mass. 389.

If, under the power to regulate the devolution of property on the death of the owner, the Legislature cannot take away altogether the inheritable quality of property, yet such regulations as are thought reasonable concerning the persons who may take or transmit real or personal property by will or inheritance have been made in every civilized state. Taxes on legacies and inheritances, or on succession in any form to property on the death of the owner, have generally been considered, not as taxes upon property, but as excises upon the privilege of taking or transmitting property in this way. The decision in *Curry* v. *Spencer*, 61 N. H. 624, that a statute imposing such a tax is in violation of the Constitution of New Hampshire, goes on the ground that the tax is not proportional, and so cannot be supported as a tax upon property under the Constitution of that State, which it seems authorizes only taxes and assessments upon polls and property. See *State* v. *United States & Canada Express Co.* 60 N. H. 219.

The Constitution of the United States, by Art. 1, § 8, provides as follows : " The Congress shall have power to lay and collect taxes, duties, imposts, and excises, to pay the debts and provide for the common defence and general welfare of the United States ; but all duties, imposts, and excises shall be uniform throughout the United States." Direct taxes must be apportioned among the several States according to the respective numbers of their inhabitants, to be determined as provided by the second section of the same article. In *Scholey* v. *Rew*, 23 Wall. 331, the validity of the succession taxes imposed by the U. S. St. of June 30, 1864, as amended by the U. S. St. of July 13, 1866, was considered. 13 Sts. at Large, 287 *et seq.* 14 Sts. at Large, 140 *et seq.* There was no room for any contention that the Congress of the United States could regulate in the States the transmission of property by will or inheritance, and the question was whether it had authority under the taxing power to

impose such taxes.  The decision was that such taxes were not
direct taxes, but excises or duties, and as such within the author-
ity of Congress to lay and collect without apportionment among
the States.  The decisions generally are that such taxes are ex-
cises.  See *Mager* v. *Grima*, 8 How. 490 ; *In re McPherson*, 104
N. Y. 306 ; *In re Swift*, 137 N. Y. 77 ; *In re Knoedler*, 140 N. Y.
377 ; *Wallace* v. *Myers*, 38 Fed. Rep. 184 ; *State* v. *Dalrymple*,
70 Md. 294 ; *Tyson* v. *State*, 28 Md. 577 ; *Eyre* v. *Jacob*, 14
Grat. 422 ; *Pullen* v. *County Commissioners*, 66 N. C. 361 ; Dos
Passos on Collateral Inheritance Taxes ; Hanson's Probate,
Legacy, and Succession Duties.

It is contended that the authority given in our Constitution to
the General Court is not to levy duties and excises generally,
but only to levy duties and excises " upon any produce, goods,
wares, merchandise, and commodities whatsoever, brought into,
produced, manufactured, or being within the " Commonwealth.
The excises to which the inhabitants of the Province of Massa-
chusetts Bay were accustomed were taxes in the nature of license
fees for carrying on certain kinds of business, taxes on the sale
of goods, wares, and merchandise, such as intoxicating liquors,
tea, coffee, and chocolate, china ware, etc., and stamp taxes on
legal papers.  The words " produce, goods, wares, merchandise
. . . brought into, produced, manufactured, or being " within
the Commonwealth, are words of definite meaning, but the words
" and commodities whatsoever " are of less certain signification.
In the general sense a commodity is something of convenience,
advantage, benefit, or profit, and in a special sense a commodity
is something produced for use, and an article of trade or com-
merce.  It has been decided that the word " commodities " in
our Constitution is not used in this special sense, and that it
means more than " produce, goods, wares, merchandise."  In
*Portland Bank* v. *Apthorp*, 12 Mass. 252, 256, the court say :
" The term ' excise ' is of very general signification, meaning
tribute, custom, tax, tollage, or assessment.  It is limited, in our
Constitution, as to its operation, to produce, goods, wares, mer-
chandise, and commodities.  This last word will perhaps embrace
everything which may be a subject of taxation, and has been
applied by our Legislature, from the earliest practice under the
Constitution, to the privilege of using particular branches of

business or employment, as the business of an auctioneer, of an attorney, of a tavern keeper, of a retailer of spirituous liquors, etc. It must have been under this general term 'commodity,' which signifies convenience, privilege, profit, and gains, as well as goods and wares, which are only its vulgar signification, that the Legislature assumed the right, which has been uniformly, and without complaint, exercised for thirty years, of exacting a sum of money from attorneys and barristers at law, vendue masters, tavern keepers, and retailers. For every man has a natural right to exercise either of these employments free of tribute, as much as a husbandman or mechanic has to use his particular calling. The money required of them is not a proportional tax; nor is it an excise or duty upon produce, goods, wares, or merchandise. It is a commodity, convenience, or privilege, which the Legislature has, by contemporaneous construction of the Constitution, assumed a right to sell at a reasonable price; and, by parity of reason, it may impose the same conditions upon every other employment or handicraft." It was held in that case that the statute laying a tax on the stock of a banking corporation was an excise on the franchise or employment, and as such was constitutional. Since that decision the Legislature has often imposed excises upon the franchises of corporations. See *Commonwealth* v. *People's Five Cents Savings Bank*, 5 Allen, 428; *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75; *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298; *Commonwealth* v. *Provident Institution for Savings*, 12 Allen, 312; *Manufacturers' Ins. Co.* v. *Loud*, 99 Mass. 146; *Attorney General* v. *Bay State Mining Co.* 99 Mass. 148; *Commonwealth* v. *Lancaster Savings Bank*, 123 Mass. 493; *Commonwealth* v. *Barnstable Savings Bank*, 126 Mass. 526; *Connecticut Ins. Co.* v. *Commonwealth*, 133 Mass. 161.

In *Attorney General* v. *Bay State Mining Co.*, *ubi supra*, the court say: "It is not merely the creation of corporate functions and privileges, or the conferring of rights and franchises by the Legislature, which entitles the State to tax the possessor of such privileges and rights. The exercise of powers or privileges, and even of occupations without especial powers or privileges, may be equally subjected to such taxation, under the constitutional authority to ' impose and levy reasonable

duties and excises.' It was so considered in the case of *Portland Bank* v. *Apthorp*, 12 Mass. 252; and the tax of one per cent, laid upon the capital stock of the bank, was justified upon principles equally applicable to individuals transacting similar business, and to brokers, factors, auctioneers, etc."

In *Commonwealth* v. *Lancaster Savings Bank, ubi supra,* the court say: " A duty or excise may thus be exacted not merely upon certain articles produced or brought into the State, but also upon any commodities whatsoever. ' Commodity ' is a general term, and includes the privilege and convenience of transacting a particular business; and, upon persons carrying on such business, it has never been questioned that the Legislature may levy an excise, or provide that a license must be obtained in order to transact it."

In *Gleason* v. *McKay*, 134 Mass. 419, it was decided that St. 1878, c. 275, was unconstitutional. That statute attempted to apply St. 1865, c. 283, " to companies, copartnerships, and other associations having a location or place of business within this Commonwealth, in which the beneficial interest is held in shares which are assignable without consent of the other associates specifically authorizing such transfer." The St. 1865, c. 283, imposed an excise tax upon the franchise of certain corporations. It was held that the tax intended to be imposed by St. 1878, c. 275, was not in the nature of a license fee, but of an excise upon a franchise or privilege, and that the defendant enjoyed no franchises or privileges conferred upon it by the Legislature. The defendant was a partnership, the peculiar feature of which was that by agreement between the partners the interest of each might be transferred in much the same manner as stock in an incorporated company. This peculiar feature was held not to be a commodity within the meaning of the Constitution. It is to be noticed that the tax intended to be imposed was not upon a business or employment. The statute in terms applied only to certain kinds of partnership, leaving other partnerships and persons doing the same kinds of business untaxed, and the partnerships taxed possessed no especial privileges derived from the Legislature. In *Portland Bank* v. *Apthorp* it was said of excises: " Taxes of this sort must undoubtedly be equal; that is, they must operate upon all persons

who exercise the employment which is so taxed." As the tax considered in *Gleason* v. *McKay* was not upon a business or employment, and as there was no franchise or privilege conferred by the Legislature, the distinction between partnerships with transferable shares and those without rendered the tax unequal and unreasonable, because it was a discrimination founded upon an immaterial fact. See *Oliver* v. *Washington Mills*, 11 Allen, 268.

When the Constitution of Massachusetts was adopted, Massachusetts was in many respects an independent State, and the Legislature could lay duties and imposts on imported goods, wares, and merchandise as well as excises on domestic goods, wares, merchandise, and commodities, and taxes and assessments upon the persons and estates of the inhabitants. The Constitution of the United States took from the States the right to lay " imposts or duties on imports or exports," but it did not affect the other powers of taxation possessed by the States unless they interfered with the powers granted to the United States. The language of the Constitution of Massachusetts is general, and may well be held to authorize the laying of excises upon all such gainful employments and privileges as are created or may be regulated by law, and commonly have been considered legitimate subjects of taxation in other States and countries. We are of opinion that the privilege of transmitting or receiving by will or descent property on the death of the owner, is a commodity within the meaning of this word in the Constitution, and that an excise may be laid upon it. Although St. 1891, c. 425, in form imposes a tax upon the property which passes in the manner described in the first section, yet the tax plainly is not meant to be a substitute for the annual tax upon estates, or to be an additional tax of that nature; the statute can only take effect by regarding the tax as an excise, and the statute should be so construed as to take effect, if such a construction reasonably can be given to it. We see no difficulty in doing this, and are of opinion that the statute was intended to impose a tax in the nature of an excise.

The only other condition expressed in the Constitution is that duties and excises must be reasonable. In *Connecticut Ins. Co.* v. *Commonwealth*, 133 Mass. 161, 163, the court say: " The

power to determine what callings, franchises, or privileges, or, to use the language of the Constitution, ' commodities,' shall be subjected to an excise, and the amount of such excise belongs exclusively to the Legislature. The provision that it must be ' reasonable ' was not designed to give to the judicial department the right to revise the decisions of the Legislature as to the policy and expediency of an excise. Great latitude of discretion is given to the Legislature in determining, not only what ' commodity' shall be subjected to excise, but also the amount of the excise and the standard or measure to be adopted as the foundation of the proposed excise. The court cannot declare a tax or excise illegal and void, as being unreasonable, unless it is unequal, or plainly and grossly oppressive, and contrary to common right."

The tax imposed by the statute we are considering is said to be unequal, because it is not imposed upon all estates and upon all heirs, devisees, legatees, and distributees. To make a distinction between collateral kindred or strangers in blood and kindred in the direct line in reference to the assessment of such a tax, either by exempting the kindred in the direct line or by imposing on collaterals and strangers a higher rate of taxation, has the sanction of nearly all States which have levied taxes of this kind. It has a sanction in reason, for the moral claim of collaterals and strangers is less than that of kindred in the direct line, and the privilege is therefore greater. The tax imposed by this statute is uniformly imposed upon all estates and all persons within the description contained in it, and the tax is not plainly and grossly oppressive in amount.

It is also contended that the tax is unreasonable on account of the exemption contained in the proviso of the first section of the statute, " that no estate shall be subject to the provisions of this act unless the value of the same, after the payment of all debts, shall exceed the sum of ten thousand dollars." In all, or nearly all, systems of taxation there are some exemptions; but the objection here is that estates whose value, after payment of all debts, shall not exceed ten thousand dollars are exempt, without regard to the value of the property received by the devisees, legatees, heirs, or distributees. It is argued that the excise, if upon the privilege of taking property by will or

descent, should be the same whenever the privilege enjoyed is the same in kind and extent, whatever may be the value of the estate, and that the exemptions should relate to the value of the property received by those who have the privilege of receiving it, and not to the value of the estate. But the right or privilege taxed can perhaps be regarded either as the right or privilege of the owner of property to transmit it on his death, by will or descent, to certain persons, or as the right or privilege of these persons to receive the property. The tax too has some of the characteristics of a duty on the administration of the estates of deceased persons. The cost of administering small estates is proportionately greater than that of administering large ones, and this of itself, particularly in intestate estates, operates to diminish the amounts received very much as a tax would. The statutes of the different States and nations which have levied taxes on devises, legacies, and inheritances have usually made exemptions, and these have sometimes related to the value of the estates, and sometimes to the value of the property received by the heirs, devisees, legatees, or distributees. The exemption in the statute under consideration is certainly large as an exemption of estates, but it is peculiarly within the discretion of the Legislature to determine what exemptions should be made in apportioning the burdens of taxation among those who can best bear them, and we are not satisfied that this exemption is so clearly unreasonable as to require us to declare the statute void.

The result is, in the opinion of a majority of the court, that in *Williams* v. *Bowditch* the judgment rendered for the defendant must be affirmed; and that in *West* v. *Phillips*, as no other objection has been taken to the decree of the Probate Court, the decree must be affirmed.

In *Minot* v. *Winthrop* there are several remaining questions. The first article of the will of Mrs. Winthrop is as follows: " First, I leave to my husband, Robert C. Winthrop, the sum of ten thousand dollars, to be given after his decease to his daughter, Elisa C. Winthrop," etc. Elisa C. Winthrop is not a daughter of the testatrix. This is a bequest of the kind contemplated by § 2 of St. 1891, c. 425, which provides that, " when any person bequeaths or devises any property to or for

the use of" certain persons which include a husband, "during life or for a term of years, and the remainder to a collateral heir or to a stranger to the blood, the value of the prior estate shall, within three months after the date of giving bond by the executor, administrator, or trustee, be appraised in the manner hereinafter provided, and deducted from the appraised value of such property, and the remainder shall be subject to a tax of five per centum of its value." The last clause of § 13 of that statute is as follows: " In case of an annuity or life estate the value thereof shall be determined by the so called actuaries' combined experience tables and four per cent compound interest."

The first article of the will in effect puts ten thousand dollars in trust to pay to Robert C. Winthrop the income thereof during his life, and on his death to pay the principal to his daughter. The statute in § 4, we think, contemplates that the tax should be computed and deducted from the principal sum and paid over to the Treasurer of the Commonwealth, " at the expiration of two years from the date" of the executors' bond, or when the legacy is paid, if paid within such two years. The consequence of paying the tax will be that the principal of the fund will be diminished below the sum of ten thousand dollars, and the income from the fund will be proportionately diminished. The legacy to Mr. Winthrop is not taxable under the statute, because he is the husband of the testratrix. The question is whether his loss of income is to be made up to him out of the principal of the fund, or out of the estate generally, or is to be borne by him as a consequence of the tax levied on the legatee of the remainder. There is nothing in the statute which authorizes any burdens to be imposed upon the legatee of the remainder in addition to the tax, and we find no warrant in the statute for taking any part of the principal of the trust fund, or of the estate generally, to make up the loss of the life tenant. There is no provision in the will for making good this loss out of the estate. We think that Mr. Winthrop must bear the loss. Perhaps a simpler way than that prescribed by the statute would have been to levy the tax at the end of the life estate upon the whole of the fund to be paid to the legatee in remainder, but the plan adopted is, we think, within the power of the Legislature, and Mr. Winthrop must be held to take his life interest subject to the law. While legacies to a husband

are exempt from the tax, the consequences to a tenant for life of imposing a tax upon a legatee in remainder and deducting it from the legacy must be held to have been intended, and no way of reimbursement to the tenant for life has been provided.

By the sixth article of the will, an annuity of five hundred dollars is to be given to the cousin of the testatrix, Mrs. Julia C. Irving. The statute contemplates, we think, that the tax should be paid out of the annuity as soon as the annuity becomes payable, and at the time when payments on account of the annuity are made. See §§ 1, 17. The effect of this construction may be that the first payment or payments on account of the annuity will be exhausted by the tax. Other methods of collecting the tax might have been adopted, such as collecting the tax on each payment and deducting it from such payment, and then the tax would be collected proportionately to the amounts paid so long as the annuity was payable, but the method found in the statute is one, we think, which the Legislature could adopt.

By the thirteenth article of the will the testatrix gave to the Congregational Church and to the St. John's Episcopal Church in Canandaigua in the State of New York one thousand dollars each. It is said in argument that the property of these religious societies is exempt from taxation by the statutes of the State of New York. See N. Y. St. 1890, c. 553, § 1. The contention of the Attorney General is that the exemption of " charitable, educational, or religious societies or institutions, the property of which is exempt by law from taxation," found in the first section of St. 1891, c. 425, is confined to societies the property of which is exempt from taxation by the laws of this Commonwealth. We think that this is the true construction. See *In re Prime*, 136 N. Y. 347 ; *Catlin* v. *Trustees of Trinity College*, 113 N. Y. 133 ; *Healy* v. *Reed*, 153 Mass. 197.

No objection has been made by any one to the clause of the decree of the Probate Court which declares that " no tax is now payable in respect of the legacies given to Antoinette Granger, Isaphine P. Granger, John Winthrop, Robert C. Winthrop, Jr., and Isabella C. Winthrop." *

---

\* The testatrix gave the income of all her personal estate remaining after a compliance with the preceding provisions of her will to her husband for

In the opinion of the majority of the court, the clause in the decree of the Probate Court in *Minot* v. *Winthrop* requiring the loss of the income of Robert C. Winthrop to be made good to him out of the fund of ten thousand dollars must be reversed and stricken from the decree, and the remainder of the decree must be affirmed.                              *Ordered accordingly.*

LATHROP, J.   I am unable to concur in the opinion of the majority of the court.   It proceeds upon the grounds that " the privilege of transmitting and receiving by will or descent property on the death of the owner is a commodity, within the meaning of this word in the Constitution," and that the tax imposed is a reasonable one.   I differ with my brethren on both grounds.

The meaning of the word " commodity " was first defined in *Portland Bank* v. *Apthorp*, 12 Mass. 252, as meaning " privilege, profit, and gains."   The tax in that case, which was upon the stock of banking corporations, was held to be constitutional on the historical ground that the Legislature had exercised the right for thirty years of exacting a sum of money, in the nature of a license, from those carrying on certain employments ; that this was a contemporaneous construction of the Constitution, and was therefore justified ; and that the same principle applied

life ; and directed her executors to dispose of the remainder of her property, after the decease of her husband, and pay each legacy in full in preference over every succeeding legacy in the order written: to Antoinette P. Granger and Isaphine P. Granger, nieces, " the sum of ninety thousand dollars in equal shares," and to Robert C. Winthrop, Jr., John Winthrop, and Isabella C. Winthrop the sum of one thousand dollars each.   The petition alleged: " The present value of the residue of personal estate available for the payment of said legacies is about one hundred thousand dollars. . . . It is possible that, when said legacies become payable, the estate remaining will be insufficient for their payment.   Said legacies are subject to taxation under said act.   But there is no property out of which the tax can be paid except the residue of personal property of which said Robert C. Winthrop is entitled to the income for life, and your petitioners are in doubt, and pray to be instructed how the taxes upon the legacies of Elisa C. Winthrop, Antoinette P. Granger, Isaphine P. Granger, Robert C. Winthrop, Jr., John Winthrop, and Isabella C. Winthrop, are to be calculated and paid, what effect, if any, is to be given to the possibility that the estate may be insufficient for the full payment of the legacies, and how the taxes can be paid before the legacies themselves are payable, without impairing the income to which the said Robert C. Winthrop is entitled."

to corporations as to individuals. In other words, the word "commodity" was held to mean the privilege of carrying on business, because the Legislature both before and soon after the framing of the Constitution had levied an excise tax on certain classes of business.

In all the subsequent cases where an excise tax has been held to be constitutional, the decision has been put upon the ground that the tax was upon the franchise of the corporation, namely, upon its privilege of doing business. *Commonwealth* v. *People's Five Cents Savings Bank*, 5 Allen, 428. *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75. *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298. *Commonwealth* v. *Provident Institution for Savings*, 12 Allen, 312. *Manufacturers' Ins. Co.* v. *Loud*, 99 Mass. 146. *Attorney General* v. *Bay State Mining Co.* 99 Mass. 148. *Commonwealth* v. *Lancaster Savings Bank*, 123 Mass. 493. *Commonwealth* v. *Barnstable Savings Bank*, 126 Mass. 526. *Connecticut Ins. Co.* v. *Commonwealth*, 133 Mass. 161.

In *Commonwealth* v. *Lancaster Savings Bank*, 123 Mass. 493, by the terms of the statute a tax was to be assessed on the first day of May on the average amount of deposits for the six months preceding that day. In the preceding December the bank was restrained by an injunction from doing further business, and placed in the hands of receivers The corporation was not dissolved by these proceedings, and it was contended that it was liable to pay the tax. It was, however, held that the tax was a franchise tax upon the privilege of doing business, and that, as the bank was not doing business on the first day of May, it was not liable.

It will be noticed in the case last cited that the tax was on the average amount of deposits during the six months prior to a certain day. During some of these months it had received deposits, but, as it was not doing business on the day named, it was held not to be liable to the tax.

In *Gleason* v. *McKay*, 134 Mass. 419, the Legislature sought to impose an excise tax upon copartnerships "in which the beneficial interest is held in shares which are assignable without consent of the other associates specifically authorizing such transfer." The statute was held to be unconstitutional. Morton, C. J. said: "This imposition is clearly not in the nature of a license fee, but is an excise upon a franchise or privilege. The

right to levy excises upon franchises has never been extended further than to corporate franchises specially granted by the government, or enjoyed and exercised by its permission. . . . If this tax can be upheld, it seems to us that the necessary result will be that the Legislature has the power to select any business, occupation or calling carried on, or any natural right enjoyed, under the protection of our laws, and impose upon it at its will a special tax or excise. This would be extending the meaning of the word ' commodities' beyond any reasonable limits. Its effect would be to break down the limitations which the Constitution intended to impose upon the power of the Legislature, for the purpose of securing the end that all sums necessary for the defence and support of the government should as far as practicable be raised by the equal taxation of the people."

The case last cited seems to me not distinguishable from the case at bar. I am also unable to see, if the privilege of transmitting and receiving by will or descent property on the death of the owner is to be considered a commodity, why the privilege of holding property cannot be considered a commodity, and why all taxes cannot be levied as excise taxes, and the burden of supporting the government be imposed upon one class in the community, without regard to proportion or equality, and thus the intent of the Constitution be entirely disregarded.

I fail also to see how the tax sought to be levied by the statute before us, if it is an excise tax, can be regarded as " reasonable." This word has always been held to include among its requirements equality. Thus in *Portland Bank* v. *Apthorp*, 12 Mass. 252, 258, it was said by Parker, C. J. : " Taxes of this sort must undoubtedly be equal; that is, they must operate upon all persons who exercise the employment which is so taxed. A tax upon one particular moneyed capital would unquestionably be contrary to the principles of justice, and could not be supported." See also *Oliver* v. *Washington Mills*, 11 Allen, 268, 280 ; *Connecticut Ins. Co.* v. *Commonwealth*, 133 Mass. 161.

So far as I am aware, no excise tax heretofore passed in this Commonwealth has contained any exemptions. Assuming that reasonable exemptions may be allowed, it seems to me that the Legislature in the statute now before us has so far exceeded its powers that the exemptions should be considered so unreason-

able, and to work so great an inequality that the act should be pronounced unconstitutional.

Without dwelling upon the exemption of direct heirs, and of charitable, educational, or religious societies, which appears to me reasonable, if any exemptions are to be allowed, it seems to me that the proviso at the end of the first section is entirely un-reasonable. This provides " that no estate shall be subject to the provisions of this act unless the value of the same, after the payment of all debts, shall exceed the sum of ten thousand dol lars." The effect of this is to throw a burdensome tax of five per cent, equal to a year's income, upon a class of estates small in comparison with the large number of estates yearly adminis-tered upon in this Commonwealth.

In other States of this country, whose constitutions allow an excise tax of this nature, there is no exemption in some, while in others the exemptions run from $250 to $500, and in none does it exceed $1,000. See Dos Passos on Collateral Inheritance Taxes, 45 *et seq.*

There is also another objection to which I see no answer. If this tax is to be considered constitutional on the ground that it is a tax upon the privilege of taking by devise or succession, there is clearly on the face of the act no equality. Suppose A. and B. die seised of separate estates, the respective values of which, after payment of debts, are ten and over ten thousand dollars. A. bequeaths a legacy to C. of five thousand dollars, and B. bequeaths a legacy to D. of the same amount. C. and D. each enjoy the same privilege ; yet C. pays no tax, while D. pays a tax of $250. Can this be said to be equal, or even reason-able ? The necessary effect of the tax is to produce inequality ; and, in my judgment, it is as much the duty of the court to de-clare the statute to be in violation of the Constitution as if it imposed a tax upon property and were disproportionate, as was done in *Cheshire* v. *County Commissioners*, 118 Mass. 386.