JAMES W. RICKER *vs.* AMERICAN LOAN AND TRUST
COMPANY.

Middlesex.    March 11, 12. — Nov. 30, 1885.    W. ALLEN, HOLMES, &
GARDNER, JJ., absent.

AMERICAN LOAN AND TRUST COMPANY *vs.* STREET COMMIS-
SIONERS OF THE CITY OF BOSTON.

Suffolk.    March 11, 12. — Nov. 30, 1885.    W. ALLEN, HOLMES, &
GARDNER, JJ., absent.

A number of persons formed an association, by an instrument in writing contain-
ing numerous articles, for the purpose of buying, selling, and leasing railroad
rolling stock, to be sold or leased to a certain railroad company, with provisions
for admitting other persons to membership. The members of the association
were to furnish money for the purchase of the rolling stock, and were to have
certificates for the amounts so furnished, providing that the principal sum con-
tributed by each member should be repaid in ten annual instalments, with
interest; both principal and interest being payable only out of the rentals re-
ceived for the rolling stock. A plan was adopted by which the association de-
livered the property to a corporation as trustee, which issued the certificates to
the members of the association, and also executed the leases to the railroad
company, with provisions for a rental sufficient to meet the above payments of
principal and interest, in addition to expenses, including taxes; and at the end
of ten years the rolling stock was to become the property of the railroad com-
pany. All contracts relating to any business of the association, involving
liabilities for the payment of money, were to be in writing, and made under the
direction of the board of managers. The original board of managers was
named in the articles of association, but the shareholders were to have the
power to remove them and to elect others. At all meetings, every shareholder
was to have one vote for each share of stock owned by him, and provision was
made for the transfer of shares, and the association was not to be dissolved by
the death of members. Every owner of one or more shares was to be entitled
to a proportionate share of the rentals received. The meetings of the board of
managers were always held in B., and all the business done by them for the
association was done there, and the association never had any other place where
its business was carried on, and the certificate holders never held any meeting.
*Held,* that the association was a partnership; that its place of business was in
B.; that rolling stock bought in pursuance of a vote of the board of managers
authorizing such purchase, delivered to the corporation as trustee, and leased by
the trustee to the railroad company, was personal property employed in the
business of the association, within the Pub. Sts. *c.* 11, § 24; and that, under the
Pub. Sts. *c.* 11, § 20, *cl.* 5, such property was taxable to the trustee in B.

THE FIRST CASE was an action of contract, by the collector
of taxes of the city of Boston, to recover the amount of a tax
assessed as of May 1, 1883, by the assessors of said city, upon

certain personal property held in trust by the defendant corporation for the New England Car Trust. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, upon agreed facts, which appear in the opinion.

THE SECOND CASE was a petition for a writ of certiorari, to quash the proceedings of the respondents in refusing to abate the same tax. The case was heard before *Devens,* J., who reserved it for the consideration of the full court. The facts appear in the opinion.

*W. C. Loring,* for the American Loan and Trust Company.

*A. J. Bailey,* for Ricker and the Street Commissioners.

C. ALLEN, J. It is provided in the Pub. Sts. *c.* 11, § 24, that " partners in mercantile or other business, whether residing in the same or in different places, may be jointly taxed under their partnership name, in the place where their business is carried on, for all the personal property employed in such business," with certain exceptions not here material. It is also provided in § 20, *cl.* 5, of the same chapter, that " personal property held in trust by an executor, administrator, or trustee, the income of which is payable to another person, shall be assessed to the executor, administrator, or trustee, in the place where such other person resides, if within the Commonwealth." By virtue of these two provisions, the property in question was properly taxed to the trustee in Boston.

1. The New England Car Trust is a partnership, unless indeed it is to be considered that there are two or more partnerships under the same name. The essential features are as follows. A number of persons formed an association, by an instrument in writing containing numerous articles, for the purpose of buying, selling, and leasing railroad rolling stock, to be sold or leased to the New York and New England Railroad Company, with provisions for admitting other persons to membership. The members of the Car Trust were to furnish money for the purchase of the rolling stock, and were to have certificates for the amounts so furnished, providing that the principal sum contributed by each member should be repaid in ten annual instalments, with interest; both principal and interest being payable only out of the rentals received for the rolling stock.

Instead of the lease being made to the railroad company directly by the Car Trust, a plan was adopted by which the Car Trust delivered the property to the American Loan and Trust Company, as trustee, which trustee issued the certificates to the members of the Car Trust, and also executed the leases to the railroad company, with provisions for a rental sufficient to meet the above payments of principal and interest, in addition to expenses, including the taxes. In this manner, the railroad company became bound by its covenants in the leases to make payments which in the course of ten years would pay in full for the rolling stock, so that the rolling stock would become the property of the railroad company at the end of that time. All contracts relating to any business of the Car Trust, involving liabilities for the payment of money, were to be in writing, and made under the direction of the board of managers. The original board of managers was named in the articles of association, but the shareholders were to have the power to remove them and to elect others. At all meetings, every shareholder was to have one vote for each share of stock owned by him, and provision was made for the transfer of shares, and the association was not to be dissolved by the death of members. Every owner of one or more shares was to be entitled to a proportionate share of the rentals received. The contemplated profits, to be sure, were limited to six per cent interest on the money advanced. The losses, if any, must be borne proportionally. This constituted a partnership.

There were provisions looking to the purchase of rolling stock from time to time, and to the issue of new certificates to those who should advance the money on the occasion of each purchase, and to the making of a new and separate lease of each lot or series of rolling stock. As such new certificates might be issued to different persons from those who contributed money for the first purchase, it would seem that the holders of each series, or separate issue of shares, would constitute a partnership by themselves, under the same general provisions and management. The Car Trust association was not a corporation. It was a mere voluntary association. There is no intermediate form of organization between a corporation and a partnership, like the joint stock companies of England and of some of the United

States, known to the laws of this Commonwealth. Since this association is not a corporation, its members must be partners, unless, indeed, as the defendant contends, they are simply co-owners. But we cannot look upon them as simply co-owners. *Whitman* v. *Porter*, 107 Mass. 522. *Hoadley* v. *County Commissioners*, 105 Mass. 519. *Gleason* v. *McKay*, 134 Mass. 419, 425.

2. The place where the business of the Car Trust was carried on was Boston. The meetings of the board of managers have always been held in Boston, and the Car Trust has never had any other place where its business was carried on, and the certificate holders, prior to the date of the assessment of the tax in controversy, had never held any meeting. All of the business done by the managers and for the company has been done in Boston. *Greene Foundation* v. *Boston*, 12 Cush. 54, 60.

3. The rolling stock upon which the tax was laid was personal property employed in the business of the Car Trust. That business was the buying, selling, and leasing of railroad rolling stock; and the rolling stock in question was bought in pursuance of a vote passed by the board of managers authorizing such purchase, and delivered to the defendant, as trustee for the Car Trust, and was leased by the trustee to the railroad company. All this was in precise conformity to the somewhat complicated plan by which the business of the Car Trust was to be carried on. *Singer Manuf. Co.* v. *County Commissioners*, 139 Mass. 266.

4. It is thus apparent that, if the Car Trust had taken the title to the property in its own name, and had executed to the railroad company the instrument called a lease, which also looks to the ultimate acquisition of title by the railroad company, the assessment of taxes upon the property would properly be laid to the Car Trust, as a partnership, in Boston. The circumstance that the property is held in trust for the Car Trust does not render it taxable elsewhere. It falls within the meaning of the Pub. Sts. *c.* 11, § 20, *cl.* 5, already cited. The partnership known as the Car Trust is to be considered as a person to whom the income is payable. By express provision of statute, the word "person" may extend and be applied to bodies politic and corporate; Pub. Sts. *c.* 3, § 3, *cl.* 16; and numerous cases decided irrespectively of statutory provisions are to the same effect.

*Beaston* v. *Farmers' Bank*, 12 Pet. 102, 134. Bishop on Written Laws, § 212, and cases cited. Whether in any particular case this construction should be given, would depend upon a consideration of the object of the statute. *Pharmaceutical Society* v. *London Supply Association*, 5 App. Cas. 857. *Guardians of St. Leonard's* v. *Franklin*, 3 C. P. D. 377. It is also provided by the Pub. Sts. c. 3, § 3, cl. 4, that words importing the singular number may extend to and be applied to several persons or things. There is no difficulty, therefore, in holding this to be " personal property held in trust by a trustee, the income of which is payable to another person." Such property is taxable in the place where such other person resides. In this case, such other person was a partnership. But partnerships, like corporations, may have a residence. A corporation is usually held to dwell at the place where it carries on its business. *Taylor* v. *Crowland Gas Co.* 11 Exch. 1. *Adams* v. *Great Western Railway*, 6 H. & N. 404. *Brown* v. *London & Northwestern Railway*, 4 B. & S. 326. *Calcutta Jute Mills* v. *Nicholson*, 1 Ex. D. 428. Indeed, a corporation may be deemed to have two domicils, when the just construction of a statute so requires. *Attorney General* v. *Bay State Mining Co.* 99 Mass. 148, 153. *Carron Iron Co.* v. *Maclaren*, 5 H. L. Cas. 416, 449. And in this case, for the purpose of taxation under the Pub. Sts. c. 11, § 20, cl. 5, when the *cestui que trust* is a partnership, the place where the partnership resides is the place where its business is carried on. This construction makes the system of taxation symmetrical, and is in conformity with the decision, that the place of business of partners is like the domicil of an individual, in *Peabody* v. *County Commissioners*, 10 Gray, 97, under the Rev. Sts. c. 7, § 13, which is in the same language as the Pub. Sts. c. 11, § 24. See also *Lee* v. *Templeton*, 6 Gray, 579; *Stinson* v. *Boston*, 125 Mass. 348, 351.

Section 47 of c. 13 of the Pub. Sts., which in terms provides another mode of taxation for companies or partnerships like that now under consideration, has been held to be unconstitutional, and did not change the existing law. *Gleason* v. *McKay*, *ubi supra*.

The result is, that the property was properly taxable to the trustee in Boston; and it may be added, that this result appears to have been contemplated in framing the articles of association,

which provide that the lessee shall covenant and agree to pay to the trustee a rent which shall be sufficient, among other things, to pay any and all taxes upon the income or property of the association connected with said series or issue of certificates, or which the trustee may be required by law to pay or to retain from dividends.

> *Judgment in the action at law affirmed. Petition for certiorari dismissed.*