## In re ASSOCIATED TRUST HOTELS, Inc.

### (District Court, D. Massachusetts. August 7, 1915.)

1. CORPORATIONS ⊚⇒546—REORGANIZATION—RIGHTS OF CREDITORS—LEASE—WAIVER—ABANDONMENT.

The L. Co. owned certain hotel property subject to incumbrances. The A. Trust bought all the stock of such company and organized the bankrupt corporation to take over the business. Instead of having the L. Co. sell its property to the new corporation, however, the property was leased to the bankrupt; this course being taken because of the existence of outstanding notes of the L. Co. and because it was considered inadvisable to surrender an existing liquor license. The lease authorized the bankrupt to take out the succeeding license in its own name and this was done. The notes in question were indorsed or guaranteed by the A. Trust and also by the bankrupt, and, one purpose for which the L. Co. was kept alive having been fulfilled, and the other having become unimportant, the L. Co. became dormant, and the referee found that the lease was waived or abandoned. *Held*, that the rights of the creditors of the two corporations, each of which was insolvent, should be worked out along the lines established by the corporations themselves, and the lease should not be treated as abandoned, as the bankrupt could not claim title under the lease and at the same time avoid its obligations thereunder to the L. Co., and abandonment or waiver, merely by conduct, of a fundamental and formal instrument, by which title to real estate is conveyed, if possible at all, requires clear and unequivocal proof.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2176, 2177; Dec. Dig. ⊚⇒546.]

2. LANDLORD AND TENANT ⊚⇒148—FAILURE TO PAY INTEREST AND TAXES—DAMAGES.

Where a lessor had not paid interest and taxes, which the lessee agreed, but failed, to pay, it was entitled only to such damages as it sustained through the lessee's failure to pay, and, while this would ordinarily be the amounts agreed to be paid, it could not be held as a matter of law that the damages were necessarily those amounts.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 520–532; Dec. Dig. ⊚⇒148.]

3. CORPORATIONS ⊚⇒546—REORGANIZATION—RIGHTS OF CREDITORS.

A lease between two corporations, all the stock of which was owned by a third corporation, provided that a liquor license in renewal of one then in existence might be applied for or renewed in the name of the lessee. By the custom of the licensing board the holder of a license was allowed, under such circumstances, to nominate the successor to the license, if it did not desire a renewal in its own name. There was no provision that, upon termination of the lease for breach of condition, the lessee would nominate the lessor or such person as the lessor might select. *Held* that, in adjusting the rights of the creditors of the two corporations, each of which was insolvent, no such agreement could be read into the lease.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2176, 2177; Dec. Dig. ⊚⇒546.]

In Bankruptcy. In the matter of the Associated Trust Hotels, Incorporated, bankrupt. On review of two orders of the referee. Order disallowing claim reversed; order denying petition for reclamation affirmed, and proof of claim recommitted to the referee.

See, also, 222 Fed. 1012.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Harold Williams, Jr., of Boston, Mass., for creditor.

William M. Noble and Walter Hartstone, both of Boston, Mass., opposed.

MORTON, District Judge. These petitions for review bring up two orders of Mr. Referee Darling—the first, disallowing a proof of claim against the bankrupt by the receiver of the Lenox Hotel Company for $27,140; the second, denying the petition by the same receiver that rights in his favor be established in certain funds of the bankrupt. The correctness of the referee's narrative of facts is not seriously disputed, but some of his conclusions, and his findings based on them, are disputed. The facts are involved; and I shall not attempt to restate them completely, referring only to such as bear upon what seem to me to be the decisive points.

[1] The Lenox Hotel Company owned, subject to various incumbrances, the real and personal property of the Hotel Lenox. The Associated Trust bought all the stock of that company. For a few months after the change of stock ownership the company continued its operations as before. Then this bankrupt corporation was formed by the new owner of the Lenox stock for the purpose of taking over the entire business of that company. This plan might have been carried out by having the Lenox Company sell all its property to the new corporation, and arrange with it for the payment or assumption of existing indebtedness. That course was not followed; instead the Lenox Company leased the hotel property, real and personal, to the bankrupt for one year from April 1, 1914, with the option to renew for four years more. Two reasons apparently led to the adoption of that course: First, the existence of about $50,000 of outstanding notes of the Lenox Company, issued to the persons who had sold out their stock in it; and, second, considerations concerning the liquor license held by it. As to the latter, the license had about a month to run when the new company took hold of the business. It was thought less expensive to have the Lenox Company continue that part of the business for the month, accounting to the new company therefor, than to surrender the license and take out another for the new company at a cost of $3,000 for the month. This was a temporary matter. The lease explicitly and unreservedly says that, as between the two companies, the right to take out the succeeding license should be in the new one. There was no reason, so far as the liquor license was concerned, why the lease should be kept alive after May 1st, when the 1914 license—which was duly procured—took effect.

As to the notes: These were issued to the persons from whom the Associated Trust had bought the stock of the Lenox Hotel Company. They were indorsed or guaranteed by the Trust, and also at a later date by the bankrupt. Thereafter the lease from the Lenox Hotel Company to the new company apparently added nothing of value to them, except as it might create paper assets available to the creditors of that company against the creditors of the new company (this bankrupt) and of the Associated Trust. This situation has in fact actually arisen, although in deciding whether the lease was waived or aban-

doned, as claimed, it is to be considered whether the parties concerned then acted in contemplation of this eventuality. The facts show clearly that they did not.

It is contended by the trustee that the lease was abandoned by both parties and became inoperative after July 1, 1914. Up to that time various accounts and transfers of cash in which the Lenox Hotel Company figures appear on its own books, and on those of the Trust, and of the bankrupt. Beginning with that date, important changes were made in those matters. The Lenox Hotel Company, largely, if not entirely, ceased to have an active bank account; the receipts of the hotel were all deposited to the bankrupt's credit; the Associated Trust debited itself with the fixed charges on the property, and, as I understand the report, charged them direct to the bankrupt. No lease account by the Lenox Hotel Company against the new company was ever kept by either corporation, or by the Trust. No acts appear to have been done after that date by either of the three parties concerned in recognition of, or proceeding from, the lease. The Trust owned the entire stock of both companies. One purpose for which the Lenox Company had been kept alive (the license) had been fulfilled; the only other purpose for regarding it (the outstanding notes) had, by reason of the indorsement and guaranty of the notes by both of the Trust and the new company, become of no substantial importance as matters then stood. The learned referee has found, as to the lease, "that, if it were not merely colorable, it was by the parties waived, abandoned, or renounced." He therefore disallowed in toto the claim in question based on the lease.

The lease was the only title which the new company, the bankrupt, had to any of the hotel property. The Lenox Company never parted with its reversion, expectant on the termination of the lease. If the lease were waived or abandoned, the result, as it seems to me, must have been to reinstate the Lenox Company as full owner of the property. It was not treated as having that position at any time after the lease was made. It seems clear that the bankrupt cannot claim the title under the lease as it is doing, and at the same time avoid its obligations thereunder to the Lenox Company.

Both corporations are insolvent, and one of them is bankrupt. The rights to be conserved are those of their creditors. All the property of the Lenox Company was by the lease turned over to the bankrupt, which at that time had no substantial property of its own.

The result of the referee's decision is to leave remediless the original creditors of the Lenox Company, who trusted it when it was a solvent, going concern, and the holders in good faith and for value of its notes before referred to. It is not shown that the lease was made in bad faith, or in intentional fraud on anybody's rights. It carried out the plan which the then owner of both companies adopted to govern their inter-relations. That plan left the Lenox Company dormant for the time being, holding its reversionary interest, with its charges and obligations all assumed by the lessee. Abandonment or waiver, merely by conduct, of a fundamental and formal instrument of this character, by which title to real estate was conveyed—

228 F.—49

assuming such a thing to be possible, which after delivery and acceptance is certainly doubtful—must require clear and unequivocal proof, especially when, as here, rights of innocent third parties will be affected thereby. I do not think that there was such proof in this case. Moreover, to hold that the lease was abandoned leads to great complication in the relations between the two companies, and to results not expected or intended. I am therefore inclined to disagree with the learned referee in this particular, and to work out the rights of creditors in these two corporations along the lines established by the corporations themselves.

[2] It follows that the order disallowing in toto the claim under the lease was erroneous and must be reversed. As the Lenox Company has not paid the interest and taxes on which its proof of claim is based, its exact right is, not to have those amounts paid to it, but to be repaid such damages as it has sustained through the bankrupt's failure to pay them as it agreed to do. While such damages would ordinarily be the amounts which were agreed to be paid and were not, it cannot, I think, be ruled as a matter of law that the damages must necessarily be those amounts. The matter must go back to the referee to state the amount of damages for which proof should be allowed, and in connection therewith to state, if in his opinion it is advisable to do so, the account between the Lenox Company and the bankrupt.

[3] As to the liquor license: The lease provides that "Said license may be applied for or renewed in the name of said lessee on and after May 1, 1914, in said lessee's own right." This is an explicit conveyance or renunciation of all the lessor's right or interest in the new license. By the custom of the Boston licensing board the holder of a license is allowed, under such circumstances as are here presented, to nominate the successor to the license, if it does not desire a renewal in its own name. That privilege must have been exercised by the Lenox Company in favor of the bankrupt. It is contended by the claimant that there ought to be read into the lease a provision, in effect, that upon any termination of the lease by the lessor for breach of condition the lessee will nominate the lessor or such person as the lessor may select for a renewal of the license. Nothing to that effect is found in the lease. The Lenox Company, as part of the consideration moving from it, relinquished to the lessee all rights in the liquor license after May 1, 1914.

For reasons before suggested, I am of opinion that the best way to adjust rights of the parties interested is to carry out the arrangement between the two companies as it was made. The court cannot change the consideration either way without substantially interfering with and varying that arrangement. The provision in question does not appear to have been in fraud of the creditors of the Lenox Company at the time when it was made, and it ought to be given effect.

The order of the learned referee denying the "petition for reclamation" was right and is affirmed.

It seems highly desirable, as suggested by the learned referee, that some method be adopted whereby the liquidations of these three closely inter-related concerns, viz., the Associated Trust, the Lenox Hotel

Company, and this bankrupt, be carried out consistently, and in harmony with each other. It may therefore be advisable to postpone final action in this estate until the other two are nearer settlement. Of this, however, the referee is the best judge.

The proof of claim is recommitted to the referee for further hearing in accordance with this opinion.