# CHARLESTON.

### ANTHONY MARCHULONIS v. CHARLES F. ADAMS, et als., Trustees.

Sumbitted October 21, 1924.   Decided November 11, 1924.

1. JOINT STOCK COMPANIES AND BUSINESS TRUSTS—*Voluntary Association Organized Under Declaration of "Trust" Held "Partnership."*

   A voluntary association organized under a declaration of trust which provides for the holding of property by trustees for the benefit of the owners of assignable certificates representing the beneficial interests in the property, and which also purports to give to the trustees absolute management of the property, but further provides:   (1) for the association together of the shareholders in stated annual meetings at which the trustees are to be elected, and in special meetings to be called by the trustees or President;   (2) that the shares may be increased or diminished only with the consent of two-thirds of the shareholders, and if they be so increased such increase shall be disposed of as the shareholders direct in meeting;   (3) that the trustees may not mortgage or pledge any of the property except upon the approval of holders of two-thirds of the shares, obtained in meeting;   (4) that the shareholders by a two-thirds vote at any time may terminate or continue the trust prior to the time fixed or beyond the period set out in the agreement; and (5) that the shareholders may at any time in a meeting called for the purpose amend the trust agreement in any way they desire, except as to the exemption of personal liability of the trustees, officers and shareholders in the association, is a partnership and not a trust.   (p. 518.)

2. SAME—*Whether Trustees Under Voluntary Association Are Shareholders Held for Jury.*

   Where such an agreement authorizes the trustees of the association to purchase shares for themselves as individuals, and they are sued as trustees doing business in the name of the association in tort for an injury inflicted in the conduct of the business of the association, it can not be assumed that they are not holders of shares in the association.   Whether they are is a question of fact, if raised by proper plea, to be determined by the jury.   (p. 535.)

Certified from Circuit Court, Marion County.

Action by Anthony Marchulonis against Charles F. Adams and others, trustees. A demurrer to the amended declaration was overruled, and the questions certified.

*Affirmed.*

*Charles E. Miller* and *Harry Shaw*, for plaintiff.
*Rollo J. Conley* and *Frank C. Haymond*, for defendants.

MEREDITH, PRESIDENT:

The circuit court overruled defendants' demurrer to plaintiff's amended declaration, and certified the questions arising thereon for review.

Plaintiff is an infant seven years of age and sues by his next friend in trespass on the case for personal injuries caused by one of defendants' cars, which ran over plaintiff. No objection is made as to any averments touching the defendants' negligence. It is tacitly admitted that the declaration, as a pleading, is sufficient, but it is contended that under the peculiar circumstances shown in this case the defendants are not liable. The question arises in this way: The defendants are sixteen individuals who are sued "as trustees doing business under the name of 'New England Fuel & Transportation Company,' an unincorporated company," by virtue of and under the authority vested in them by a certain declaration of trust, with amendments thereto, duly recorded in the clerk's office of the county court of Marion County, and which agreement and amendments are set out in full. The agreement appears to be one of the ordinary forms used in creating an association, as distinguished from the ordinary partnership on the one hand, and from a corporation on the other. These have been so thoroughly developed in Massachusetts that they are commonly called "Massachusetts Trusts," though they are in common use in other states. The defendants contend that they are active trustees, managing and controlling the properties of and for their cestuis que trust, and that in order to subject the trust property to plaintiff's claim plaintiff must sue in equity. Plaintiff contends that defendants are partners, but that if they are not, but are active trustees, they may be sued at law and a judgment rendered against them, binding upon the trust property.

This is the first time this vexatious and much mooted question has been presented to this court, and on account of its importance we have given the question more than ordinary consideration. In order to understand the particular questions arising it is necessary to have before us the salient parts of the agreement, as these determine whether defendants are trustees or partners or mere managing agents for a partnership. The parts which in our opinion are decisive of the question are for convenience italicised, the main portions of the agreement, aside from the names and signatures of the parties are as follows:

"Whereas, it is proposed that the Trustees shall acquire either from or through the agency of the Massachusetts Gas Companies, upon such terms and conditions as may be agreed upon, certain property and cash, and shall employ and manage the same and all other properties which they may hereafter acquire as such Trustees, in the manner hereinafter stated; and it is likewise proposed that the beneficial interest in the property, from time to time held by the Trustees, and in the business conducted by them, shall be divided into shares to be evidenced by certificates therefor, as hereinafter provided.

"Now, therefore, The Trustees hereby declare that they will hold said property and cash so to be acquired by them, as well as all other property which they may acquire as such Trustees, together with the proceeds thereof, in trust to manage and dispose of the same for the benefit of the holders, from time to time, of these certificates of shares issued and to be issued hereunder, and in the manner and subject to the stipulations herein contained, to-wit:

"First: The Trustees in their collective capacity, shall be designated, as far as practicable, as the 'New England Fuel & Transportation Company,' and under that name shall, so far as practicable, conduct all business and execute all instruments in writing, in the performance of their trust.

"Second: The trustees shall be sixteen in number, and the Trustees herein before mentioned shall hold office until the annual meeting of the shareholders in 1918, except that said Trustees, as well

as well as any Trustees hereafter elected, shall in all cases hold office until their successors have been elected and accepted this trust.

*"The shareholders shall at annual meeting or adjournment thereof elect Trustees to serve for the next ensuing year.* In case of the death, resignation or inability to act of any of the said Trustees, the remaining Trustees shall fill any vacancies for the unexpired term. As soon as any Trustees elected by the shareholders or by the remaining Trustees to fill a vacancy have accepted this trust, the trust estate shall vest in the new Trustee or Trustees together with the continuing Trustees without any further act or conveyance. Upon the election of any Trustee, either by the remaining Trustees to fill a vacancy or by the shareholders, he shall forthwith execute a written acceptance of this trust, which, together with the certificate of the Secretary of the election of such Trustee, shall be forthwith filed with the Bank or Trust Company having the custody of the duplicate original of this instrument.

"Third: The Trustees are authorized to engage,

"(a) In the business of buying and selling and dealing in coal and oil and all products thereof;

"(b) In the business of owning and operating steamers, tow boats, barges, sailing vessels or other waterborne craft;

"(c) In the business of owning and operating coal mines, oil wells and coke oven plants;

"(d) In the business of acquiring, owning, managing, exchanging, selling and dealing in the stocks, shares and securities of corporations, trusts or associations engaged, in the whole or in part, in any business above mentioned, or in owning or operating railways or railroads or transporting passengers, merchandise, mails, or express matter, or in manufacturing, selling, or repairing machines, equipment, supplies, or other articles used by corporations, trusts or associations of any of the classes above mentioned, or in the business of acquiring, owning, managing, exchanging, selling, or dealing in the stocks, shares or securities of any corporation, trust or association which owns, or whose stocks or securities are based upon or secured by the stocks, or securities of any corporation, trust or association of the character above mentioned.

" (e) In any business similar in character to that above mentioned which the Trustees may deem expedient, and to acquire, hold, and dispose of the stocks, shares, or securities of corporations, trusts, or associations doing business of a character similar to any business above described.

"The Trustees shall hold the legal title to all property at any time belonging to this trust, and, subject only to the specific limitations herein contained, they shall have the absolute control, management, and disposition thereof, and shall likewise have the absolute control of the conduct of all business of the trust; and the following enumeration of specific duties and powers shall not be construed in any way as a limitation upon the general powers intended to be conferred upon them.

"The Trustees shall have authority to adopt and use a common seal; to make all such contracts as they may deem expedient in the conduct of the business of the trust; from time to time to release, sell, exchange or otherwise dispose of, at public or private sale, any or all of the trust property, whether real or personal, for such prices either in cash or the stocks, shares, or securities of other corporations, trusts or associations and upon such terms as to credit or otherwise as they may deem expedient; to guarantee or assume the obligations of other corporations, trusts or associations and to enter into such agreements by way of indemnity or otherwise as they may deem expedient in connection with the acquisition of property as hereinbefore provided or otherwise; to confer, by way of substitution, such power and authority upon the chairman of the Trustees, President, Treasurer, Secretary, and Executive Committee, and other officers and agents appointed by them, as they may deem expedient; to borrow money for the purposes of the trust and give the obligations of the Trustees therefor.; to loan any money from time to time in the hands of the Trustees, with or without security, on such terms as they may deem expedient; to subscribe for, acquire, own, sell, or otherwise dispose of such real or personal property, including the stocks, shares, and securities of any other corporations, trusts or associations, as they may deem expedient in connection with the purposes of the trust; to vote in person or

by proxy on all shares of stock at any time held by them, and to collect and receive the income, interest and profits of any such stock or securities; to collect, sue for, receive, and receipt for all sums of money at any time becoming due to said trust; to employ counsel and to begin, prosecute, defend and settle suits at law, in equity or otherwise, and to compromise or refer to arbitrators any claims in favor of or against the trust; and in general to do all such matters and things as in their judgment will promote or advance the business which they are authorized to carry on, although such matters and things may be neither specifically authorized nor incident to any matters or things specifically authorized. In addition to the powers herein granted the Trustees shall have all powers with reference to the conduct of the business and management of the property of the trust which are possessed by directors of a manufacturing corporation under the laws of the Commonwealth of Massachusetts.

"So far as strangers to the trust are concerned, a resolution of the Trustees authorizing a particular act to be done shall be conclusive evidence in favor of strangers that such act is within the power of the Trustees; and no purchaser from the Trustees shall be bound to see to the application of the purchase money or other consideration paid or delivered by or for said purchaser to or for the Trustees.

"Fourth. Stated meetings of the Trustees shall be held at least once a month, and other meetings shall be held from time to time upon the call of Chairman of the Trustees, the President or any three of the Trustees. A majority of the Trustees shall constitute a quorum; and the concurrence of all the Trustees shall not be necessary to the validity of any action taken by them, but the decision expressed by vote of a majority of the Trustees present and voting at any meeting shall be conclusive.

"The Trustees may make, adopt, amend, or repeal such by-laws, rules, and regulations not inconsistent with the terms of this instrument as they may deem necessary or desirable for the conduct of their business and for the government of themselves, their agents, servants and representatives.

"Fifth: The Trustees shall annually elect from among their number a chairman and a President, and shall also elect from among their number or otherwise a Treasurer, a Secretary, and, in their discretion, one or more Vice-Presidents, and one or more Assistant Treasurers or Secretaries, and they shall have authority to appoint such other officers, agents and attorneys as they may deem necessary or expedient in the conduct of their business. They shall also have authority to accept resignations and to fill any vacancies in the officers appointed by them, for the unexpired term, and shall likewise have authority to elect temporary officers to serve during the absence or disability of regular officers. They may also by a majority vote of all the trustees remove any officer or agent elected or appointed by them.

"The Chairman, when present, shall preside at all meetings of the Trustees. The President, Treasurer and Secretary shall have the authority and shall perform the duties usually incident to those offices in the case of corporations, so far as applicable thereto, all of said officers shall have such other authority and perform such other duties as may from time to time be determined by the Trustees. The Trustees shall fix the compensation, if any, of all officers and agents whom they may elect or appoint, and may also pay to themselves such compensation for their own services as they may deem reasonable.

"The Trustees may also appoint from among their number an Executive Committee of three or five persons, to whom they may; delegate such of the powers herein conferred upon the Trustees as they may deem expedient.

"The Trustees shall cause to be kept by the Secretary elected by them a record of all meetings of the shareholders, Trustees, and Executive Committee, which record shall be of the same character and effect as that kept in the case of corporations, and, so far as strangers to the trust are concerned, shall be conclusive against the Trustees of the facts and doings stated therein.

"The Trustees shall not be liable for any error of judgment, or for any loss arising out of any act or omission in the execution of this trust, so long as they act in good faith, nor shall they be

personally liable for the acts or omissions of each other, or for the acts or omissions of any officer, agent, or servant elected or appointed by or acting for them; and they shall not be obliged to give any bond to secure the due performance of this trust by them.

"Any Trustee may acquire, own and dispose of shares in this trust to the same extent as if he were not a Trustee.

"Sixth: The beneficial interests in this trust shall, in the first instance, be divided into two hundred and fifty thousand (250,000) shares of the par value of one hundred dollars ($100) each.

"As evidence of the ownership of said shares the Trustees shall cause to be issued to each shareholder a negotiable certificate or certificates, to be signed by the President, or any Vice-President, and attested by any Secretary or Assistant Secretary, which certificate shall be in the form following, to-wit:

## "NEW ENGLAND FUEL AND TRANSPORTATION COMPANY.

"No.

"Not Subject to Assessment.

"This certifies that.............is the holder of........shares in the New England Fuel and Transportation Company, which he holds subject to an agreement and Declaration of Trust dated............, 1917, a duplicate original of which is on file with the................., and which is hereby referred to and made a part of this certificate.

"The shares in the New England Fuel and Transportation Company are of the par value of one hundred dollars each.

"No transfer hereof will be of any effect as regards the New England Fuel and Transportation Company until this certificate has been surrendered and the transfer recorded upon their books.

"In Witness Whereof, the Trustees under said Declaration of Trust, herein designated as the New England Fuel and Transportation Company, have caused their common seal to be hereto affixed and this certificate to be executed in their name and behalf, by their president, and attested

by their secretary, this........day of..........
NEW ENGLAND FUEL AND TRANSPORTATION
   COMPANY,
               By.......................
Attest:                                     President.
.......................
              Secretary.

  For value received....hereby sell, assign, and transfer unto.................... shares of the New England Fuel and Transportation Company represented by the within certificate, and do hereby irrevocably constitute and appoint ................attorney, to transfer the said shares on the books of the within named Company, with full power of substitution in the premises.·

  Witness......hand this......day of........ In presence of...................

  "Seventh: The shares hereunder shall be transferable by an appropriate instrument in writing and upon surrender of the certificate therefor, but no such transfer shall be of any effect as regards the Trustees until it has been recorded upon the books of the Trustees kept for that purpose.

  "Eighth: The Trustees shall issue to the Massachusetts Gas Companies, or their assigns, certificates for said original two hundred and fifty thousand shares, in payment for and as evidence of their ownership of the beneficial interest in the property and cash proposed to be transferred to the Trustees by the Massachusetts Gas Companies, as hereinbefore stated.

  "Ninth: *For any of the purposes of the trust number of shares may from time to time, with the consent of the holders of not less than two thirds of such of the shares as are represented and voted upon at any meeting called for that purpose, but not otherwise, be increased or reduced. In case the number of shares is increased, the additional shares shall be issued and disposed of upon such terms and in such manner as the shareholders at such meeting may determine.*

  Tenth: In case of the loss or destruction of any certificate for shares the Trustees may, under such conditions as they may deem expedient, issue a new certificate or certificates in place of the one lost or destroyed.

"Eleventh: *The Trustees may, with the consent of the holders of at least two-thirds of the shares outstanding, given at a meeting called for that purpose, but not otherwise, mortgage or pledge any property in their hands, upon such terms and for such purposes as the shareholders at such meeting may approve.*

"Twelfth: The Trustees may from time to time declare and pay dividends out of the net earnings from time to time received by them but the amount of such dividends and the payment of them shall be wholly in the discretion of the Trustees.

"Thirteenth: The fiscal year of the Trustees shall end on the thirtieth day of June in each year.

*"Annual meetings for the election of Trustees and for the transactions of other business shall be held in Boston, on the second Tuesday of October in each year, beginning with the year 1918, of which meetings notice shall be given by the Secretary by mailing such notice to each shareholder at his registered address at least ten days before said meeting.*

*"Special meetings of the shareholders may be called at any time by the President or by the Trustees.* Notice of such meetings shall be given by the Secretary by mailing such notice to each shareholder at his registered address at least ten days before said meeting.

*"At all meetings of the shareholders each holder of shares shall be entitled to one vote for each share held by him; and any shareholder may vote by proxy.*

*"No business shall be transacted at any meeting of the shareholders unless notice of such business has been given in the call for the meeting. No business except to adjourn, shall be transacted at any meeting of the shareholders unless the holders of a majority of all of the shares outstanding are present in person or by proxy.*

"Fourteenth: Shares hereunder shall be personal property, giving only the rights in this instrument, and in the certificates hereof, specifically set forth. The death of a shareholder during the continuance of this trust shall not operate to determine this trust, nor shall it entitle the representatives of the desceased shareholder to an accounting or to take any action in the courts or

elsewhere against the Trustees; but the executors, administrators, or assigns of any deceased shareholder shall succeed to the right of said decedent under this trust, upon the surrender of the certificate or shares owned by him.

"The ownership of shares hereunder shall not entitle the shareholders to any title in or to the the trust property whatsoever, or right to call for a partition or division of the same, or for an accounting; and no shareholder shall have any other or further rights than the right of a stockholder in a corporation, so far as the same may be applicable.

"Fifteenth: The Trustees shall have no power to bind the shareholders personally, or to call upon them for the payment of any sum of money or any assessment whatever other than such sums as they may at any time personally agree to pay by way of subscription to new shares or otherwise. All persons or corporations extending credit to, contracting with or having any claim against the Trustees shall look only to the funds and property of the trust for the payment of any such contract or claim, or for the payment of any debt, damage, judgment, or decree, or of any money that may otherwise become due or payable to them from the Trustees, so that neither the Trustees, shareholders nor officers, present or future, shall be personally liable therefor.

"In every written order, contract, or obligation which the Trustees or officers shall give, authorize, or enter into, it shall be the duty of the Trustees and officers to stipulate or cause to be stipulated, that neither the Trustees, officers nor shareholders shall be held to any personal liability under or by reason of such order, contract, or obligation.

"It is further expressly agreed that in case any Trustee, officer, or shareholder shall at any time for any reason be held to or be under any personal liability as such Trustee, officer, or shareholder, not due to his acts in bad faith, then such Trustee, officer, or shareholder, shall be held harmless and indemnified out of the trust estate from and of all loss, cost, damage, or expense by reason of such liability; and, if at any time the trust estate shall be insufficient to provide for such indemnity and to satisfy all liabilities of and claims

upon it, then the trust estate shall, in preference
and priority over any and all other claims or liens
whatsoever, except mortgages, and except as other-
wise expressly provided by law, be applied first
to the indemnification of the Trustees from any
loss, cost, damage, or expense in connection with
any personal liability which they may be under
or have incurred except as aforesaid; next, to
the indemnification in the same manner of the of-
ficers, and thereafter to the indemnification in like
manner of the shareholders.

"Sixteenth: This trust shall continue for the
term of twenty-one years after the death of the
last survivor of the persons whose names are signed
hereto, at which time the then Trustees shall pro-
ceed to wind up its affairs, liquidate its assets,
and distribute the same among the holders of the
shares; *provided, however, that, if prior to the
expiration of said period the holders of at least
two-thirds of the shares then outstanding shall at
a meeting called for that purpose, vote to term-
inate or continue this trust, then said trust shall
either forthwith terminate or continue in existence
for such further period as may then be determ-
ined.*

"For the purpose of winding up their affairs and
liquidating this trust the then Trustees shall con-
tinue in office until such duties have been duly per-
formed.

"Seventeenth: *This agreement and Declaration
of Trust may be amended or altered in any parti-
cular whatsoever, except as regards the exemption
from personal liability of the Trustees, officers
and shareholders, at any meeting of the share-
holders, with the consent of the holders of at least
two-thirds of the shares then outstanding, pro-
vided notice of the proposed amendment or alter-
ration shall have been given in the call for the
meeting;* and in case of such alteration or amend-
ment the same shall be attached to and made a
part of this agreement, and a copy thereof, with
the certificate of the Secretary as to its adoption
shall be filed with the bank or trust company at
that time having the custody of the duplicate ori-
ginal of this instrument.

"Nothing in this article contained shall in any
way be construed to limit the power to increase

or reduce the number of shares as provided in the ninth article hereof.

"Eighteenth: A duplicate original or this agreement and Declaration of trust shall be deposited with such Bank or Trust Company in the City of Boston as the Trustees may from time to time designate, and the Trustees shall have power at any time to change the company with which such duplicate original is deposited.

"Nineteenth: The Trustees from time to time shall determine whether and to what extent and at what times and places and under what conditions and regulations the accounts and the books of the Trustees or any of them shall be open to the inspection of the shareholders, and no shareholder shall have any right to inspect any account or book or document of the Trustees except as authorized by the Trustees or by resolution of the shareholders."

Under this agreement the trustees have acquired and are operating coal mines, and it was in connection with the operation of one of these mines that the injury complained of was inflicted. The original agreement purports to have been executed at Boston, June 28, 1917; all the trustees, save one, appear to reside in Massachusetts; the annual meetings of the shareholders are to be held in Boston. It does not now appear who the shareholders are. They are not named. Probably they are unknown to the plaintiff. The original agreement provides that the original 250,000 shares shall be issued to Massachusetts Gas Companies, one of the original parties to it. While the trustees are not limited to the state of Massachusetts in carrying on the business, we think the agreement can be properly called a Massachusetts contract, and we are justified in determining its meaning in the light of the laws of that state as interpreted by the Supreme Judicial Court of that state, since we find nothing in the law of our state declaring such an agreement, so far as it affects the rights of the parties between themselves, to be contrary to the public policy of this state. *Franklin Sugar Refining Company* v. *Martin-Nelly Grocery Company*, 94 W. Va. 504, 119 S. E. 473.

Many cases involving such agreements have arisen in Massachusetts, for the most part under the right of the state to tax the interests of the shareholders. In a number of cases the association was adjudged to be a partnership. *Hoadley* v. *County Com'rs.*, 105 Mass. 519; *Whitman* v. *Porter*, 107 Mass. 522; *Gleason* v. *McKay*, 134 Mass. 410; *Phillips* v. *Blatchford*, 137 Mass. 510; *Ricker* v. *American Loan & Trust Co.*, 140 Mass. 346, 5 N. E. 284; *Williams* v. *Boston*, 208 Mass. 497, 94 N. E. 254. In others the association was adjudged to be a trust. *Mayo* v. *Moritz*, 151 Mass. 481, 24 N. E. 1083; *Hussey* v. *Arnold*, 185 Mass. 202, 70 N. E. 87. These and other cases were reviewed at length in *Williams* v. *Milton*, 215 Mass. 1, 102 N. E. 355, and the distinction between associations that are partnerships and those that are trusts is pointed out. Two tests appear to be laid down in that case to determine whether an association is a partnership or a trust,—(1) Association of the shareholders, and (2) control by the shareholders over the conduct of the business. It would seem that where these are provided for under the agreement the association is a partnership, and not a trust. In the opinion it is said:

> "Where persons associate themselves together to carry on business for their mutual profit, they are none the less partners because (1) their shares in the partnership are represented by certificates which are transferable and transmissible, and because (2) as a matter of convenience (if not of necessity in case of transferable and transmissible certificates) the legal title to the partnership property is taken in the name of a third person. The person in whose name the title to the partnership property stands in such a case is perhaps in a sense a trustee. But speaking with accuracy he is an agent who for the principal's convenience holds the legal title to the principal's property."

After reviewing the various cases, the opinion further says:

> "The difference between *Hoadley* v. *County Commissioners*, 105 Mass. 519 (involving the same indenture as that in *Gleason* v. *McKay*, 134 Mass. 419), *Whitman* v. *Porter*, 107 Mass. 522, *Phillips* v.

*Blatchford,* 137 Mass. 510, *Ricker* v. *American Loan & Trust Co.,* 140 Mass. 346, and *Williams* v. *Boston,* 208 Mass. 497, on the one hand, and *Mayo* v. *Moritz,* 151 Mass. 481, on the other hand, lies in the fact that in the former cases the certificate holders are associated together by the terms of the 'trust' and are the principals whose instructions are to be obeyed by their agent who for their convenience holds the legal title to their property. The property is their property. They are the masters. While in *Mayo* v. *Moritz* on the other hand there is no association between the certificate holders. The property is the property of the trustees and the trustees are the masters. All that the certificate holders in *Mayo* v. *Moritz* had was a right to have the property managed by the trustees for their benefit. They had no right to manage it themselves nor to instruct the trustees how to manage it for them. As was said by C. Allen, J., in *Mayo* v. *Moritz,* 151 Mass. 481, 484: 'The scrip-holders are *cestuis que trust,* and are entitled to their share of the avails of the property when the same is sold' and that is all to which they were entitled. In *Mayo* v. *Moritz,* the scrip-holders had a common interest in the trust fund in the same sense that the members af a class of life tenants and the members of a class of remaindermen (among whom the income of a trust fund and the corpus are to be distributed respectively) have a common interest. But in *Mayo* v. *Moritz* there was no association among the certificate holders just as there is no association although a common interest among the life tenants or the remaindermen in an ordinary trust. For a decision in this Commonwealth somewhat like *Mayo* v. *Moritz, ubi supra* see *Hussey* v. *Arnold,* 185 Mass. 202. See also in this connection *Makin* v. *Savings Institution of Portland,* 23 Maine, 350; *Burt* v. *Lathrop,* 52 Mich. 106.''

''This brings us to the question of the character of the Boston Personal Property Trust. It is plain that it is a trust and not a partnership. By the terms of the indenture of trust the property contributed by the certificate holders, or that bought with money contributed by them ( the original trust property could be acquired in both ways by the terms of the indenture of trust) was to

be held by the trustees in trust to pay the income to the holders of the certificates and on the termination of the trust to divide the trust fund or the proceeds thereof among them. The certificate holders are throughout called '*cestuis que trustent*'. The certificate holders, or '*cestuis que trustent*', are in no way associated together, nor is there any provision in the indenture of trust for any meeting to be held by them. The only act which (under the trust indenture) they can do is to consent to an alteration or amendment of the trust created by the indenture or to a termination of it before the time fixed by the deed. But they can not force the trustees to make such an alteration, amendment or termination. It is for the trustees to decide whether they will do any one of these things, All that the certificate holders or '*cestuis que trustent*' can do is to give or withhold their consent to the trustees taking such action. And the giving or withholding of consent by the *cestuis que trust* for that or any other purpose is provided for in the trust indenture. The trustees of the Boston Personal Property Trust have a right to sell the trust securities and reinvest the proceeds, and also a limited power to borrow on the security of the trust property. The certificate holders, or '*cestuis que trustent*,' as they are called in the trust deed, have a common interest in precisely the same sense that the members of a class of life tenants (among whom the income of a trust fund is to be distributed) have a common interest, but they are not *soci*, and it is the trustees, not the certificate holders, who are the masters of the trust property. The sole right of the *cestuis que trust* is to have the property administered in their interest by the trustees, who are the masters, to receive income while the trust lasts, and their share of the corpus when the trust comes to an end."

In that case the Copley Square Trust was held to be a trust, —not a partnership. The distinction therein announced was followed in *Frost* v. *Thompson*, 219 Mass. 360, 106 N. E. 1009, where the Buena Vista Company was adjudged to be a partnership. It was there held:

"Where a declaration of trust and by-laws, pro-

viding for the holding of property by trustees for the benefit of the owners of assignable certificates representing the beneficial interest in the property, provide that the shareholders representing two-thirds in value of outstanding shares shall have power to remove any or all of the trustees at any time without assigning any cause, to fill any vacancy so caused, to terminate the trust at any time previous to the specified limitation and to terminate it by compelling the trustees to convey the trust property to new trustees upon a different trust or to a corporation; and further provides that a majority of the shareholders at any time may amend the declaration of trust and at any annual or special meeting may amend the by-laws, the voluntary association thus formed is a partnership and not a trust.''

This distinction is also made in *Crocker* v. *Malley,* 249 U. S. 452, 39 Sup. Ct. Rep. 270, 67 Law ed. 573.

When we examine the agreement in the instant case we find that it clearly provides for annual meetings of the shareholders to be held on the second Tuesday of October of each year. Special meetings are provided for, though these are to be called by the President or Trustees. Hence it clearly appears that the shareholders are associated together.

We are not, however, called upon to determine whether association of the shareholders in itself would create a partnership. In this case the shareholders have not surrendered all control of the property to the trustees. True, the trustees have broad powers, but they are not plenary and uncontrollable, as we shall see.

1. Under the ninth paragraph the shares may be increased or diminished, but only with the consent of two-thirds of the shareholders. If increased, the additional shares are to be disposed of as the shareholders direct in a meeting. This, of course, only indirectly affects the property held by the trustees.

2. The trustees may not, under paragraph eleven mortgage or pledge any of the property except upon the approval of holders of two-thirds of the shares outstanding, obtained in meeting.

3. Under paragraph sixteen it is provided that the trust shall continue for twenty-one years after the death of the last survivors of the persons who signed the agreement. When that occurs the then trustees must liquidate the assets and distribute them among the shareholders; but it is further provided that if prior to that time the holders of two-thirds of the shares shall at a meeting called for the purpose vote to terminate or to continue the trust, it shall be terminated or continued as shall be directed. Here in one very important particular the shareholders have absolute control; of course, by a two-thirds vote, but whether by two-thirds or a majority vote would seem to be unimportant. The fact that the shareholders have at all times prior to the happening of the event when the trust must terminate by its terms the power to end or to continue it at their own pleasure can not be ignored.

4. But under the seventeenth paragraph still broader powers are given the shareholders. The agreement may, by the consent of two-thirds of the shareholders in a meeting called for the purpose, be amended in any way they desire except in one particular: the exemption from personal liability of the trustees, officers and shareholders may not be waived. Under this provision, the shareholders can do about as they please with the property. They can amend the declaration of trust in such manner that the trustees would be shorn of their power; they can give the trustees minute directions as to the control and management of the property; or they can provide for the election by the shareholders of the officers and agents who are to be the active managers or agents. In short, there is nothing in respect to the property the shareholders may not do, provided the trustees or non-concurring shareholders are not made personally responsible for the liabilities growing out of the business. It has been suggested by some writers that this reserved power should make no difference so long as it is not exercised, and for that reason it should not operate to make an association a partnership which would otherwise be a trust. But we think otherwise. The power to control is in the shareholders, whether they exercise it or not. Indeed, under such power it is not unreasonable to assume that

the trustees would follow their directions even though they were informally given. We find in this agreement no such uncontrollable authority lodged in the trustees as was possessed by the trustees in *Williams* v. *Milton, supra,* or *Crocker* v. *Malley, supra.* See also: *In re Associated Trust Hotels,* 228 Fed. 767; *Simson* v. *Klipstein,* 262 Fed. 823: *Wild* v. *Davenport,* 48 N. J. Law, 129, 7 Atl. 295, 57 Am. Rep. 552.

We therefore have a declaration of trust that has the two provisions regarded as controlling in *Williams* v. *Milton, supra,* and which, we believe, under the Massachusetts decisions make the association in this case a partnership,—not of the ordinary kind, to be sure, but none the less a partnership as distinguished from a trust. Later decisions from that state but reinforce this view. *Dana* v. *Treasurer and Rec. General,* 227 Mass. 562, 116 N. E. 941; *Priestly* v. *Treasurer and Rec. General,* 230 Mass. 452, 120 N. E. 100; Sears' Trust Estates and Business Companies, (2d. ed.) §91.

Under the agreement the trustees may acquire shares, The declaration avers that the defendants are doing business under that agreement. It does not directly declare that any of them own, or do not own shares. We can not assume that they do not. If any of them own shares they are partners of all the other shareholders. If they do not, of course, they are not partners; they would be managing agents only, and in that relation merely would not be liable for the injury complained of as laid in the declaration. But whether they are shareholders or not is a matter of proof, should it be denied by plea as required by statute, Code, ch. 125, sec. 41. Since it does not appear from the declaration that the defendant trustees are not partners, the declaration is not subject to demurrer on the ground (1) that the agreement created a trust and not a partnership, or (2) that the trustees are managing agents and not partners. Of course, the non-joinder of the other shareholders, if there be any, would not render the declaration demurrable, even if this were shown on the face of the pleading, this action being for tort.

If the agreement created a trust as distinguished from a partnership, then the defendants as trustees would be personally liable for their torts. Whether the trust property in

that event could be subjected to the lieu of a judgment in this case does not arise upon the demurrer. But as we have concluded that the association is a partnership, further discussion of that question would be improper.

The ruling of the circuit court is affirmed, and it will be so certified.

*Affirmed.*