STATE TAX COMMISSION *vs.* AETNA LIFE INSURANCE COMPANY.

Suffolk.    December 6, 1954. — March 14, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Taxation,* Insurance company.  *Insurance,* Life insurance: reinsurance.

In determining the "net value" of life insurance policies upon which a life insurance company taxable on the net value basis should pay an excise in 1952 under G. L. (Ter. Ed.) c. 63, § 20, as amended, there should be deducted the net value of policies reinsured by the company with other companies qualified under c. 175, § 20, as amended, and by reinsurance agreements conforming thereto. [396, 400]

The provisions of G. L. (Ter. Ed.) c. 175, § 20, as amended by St. 1941, c. 343, by St. 1946, c. 508, and by St. 1948, c. 571, that "When reinsurance [by a life insurance company] is . . . effected the ceding . . . life company shall be charged thereafter with a reserve liability . . . representing the proportion of the obligation retained by it, and the company with which the reinsurance is effected shall be charged thereafter in like manner with the proportion of the obligation assumed by it.  Both the companies shall together carry the same . . . reserve which the ceding company would have carried had it not reinsured the risk," impliedly refer to and affect the reserve liability which is to be computed annually by the commissioner of insurance under c. 175, § 9, as amended. [400]

APPEAL from a decision by the Appellate Tax Board.

*Harris A. Reynolds,* Assistant Attorney General, (*George Luftman* with him,) for the State tax commission.

*Richard Wait,* for the taxpayer.

WILKINS, J.    The State tax commission appeals from a decision of the Appellate Tax Board granting an abatement to Aetna Life Insurance Company, a Connecticut corporation, upon a part of the taxes paid the Commonwealth under its 1952 excise tax return.  G. L. (Ter. Ed.) c. 63, § 20, as appearing in St. 1943, c. 531, § 1.  The parties are in agreement that Aetna is taxable on the basis of the net value of policies issued, or assumed, by it and in effect on

December 31, 1951, at the rate of $\frac{1}{4}$ of 1% (see St. 1941, c. 509, § 5), and not on the basis of premiums received during 1951 at the rate of 2% (see St. 1943, c. 531, § 1). See *Commissioner of Corporations & Taxation* v. *Aetna Life Ins. Co.* 328 Mass. 404, 406, where it was pointed out that under the 1941 statute every life company was taxable on the net value of its policies; that the 1943 statute, effective January 1, 1944, substituted a tax based on premiums, which, however, did not apply to all companies on its effective date; that beginning with the 1944 return each company should compute the tax on both bases; and that so long as the tax on net value was less than the tax on premiums, a company should continue taxable upon net value until in any year the tax on net value equalled or exceeded the tax on premiums in which event the company should for that year and for all subsequent years pay the excise on the new premium basis.

The facts are found in the decision of the board. According to Aetna's return, on December 31, 1951, the aggregate net value of its Massachusetts business was $40,511,069, of which $39,650,654 was "net value of policies." Of the policies all or part of the risk of some had been reinsured with other life companies. The net value of the policies so ceded by Aetna and assumed by the other companies was $456,630. The exact question we have to decide is whether Aetna could deduct this figure in determining the net value upon which it must pay a tax. The commissioner of corporations and taxation disallowed most of the deduction,[1] but the Appellate Tax Board granted an abatement of $768.73, the full amount claimed.

The pertinent provisions of G. L. (Ter. Ed.) c. 63, § 20, as amended by St. 1941, c. 509, § 5, are: "Every life in-

---

[1] In a letter to the taxpayer the commissioner of corporations and taxation said: "Allowance for deduction for net value of policies reinsured in authorized companies has always been limited to the amount reported by the assuming company in its net value taxable basis; therefore, cessions to . . . [three companies] have been totally disallowed because these three companies have gone over to the premium basis, and the deduction covering cession to . . . [a fourth company] is limited to . . . the frozen amount which that company reported assumed in their 1944 return."

surance company . . . shall annually pay an excise of one quarter of one per cent upon the net value of all policies in force on December thirty-first of the year preceding that in which the tax is payable, issued or assumed by such company on the lives of residents of this commonwealth as determined by the commissioner [of corporations and taxation] from the return required under this section and such other evidence as he may obtain. . . . Every such company shall annually . . . make a return to the commissioner . . . giving . . . the total number of policies in force on December thirty-first . . . , the aggregate net value thereof and the aggregate amount insured. . . . In respect to ordinary business the aggregate net value so reported shall be the combined aggregate of the mean reserve computed for each policy, or each group of policies requiring a separate computation to determine their net value, on the basis of valuation used or approved by the commissioner of insurance under section nine of chapter one hundred and seventy-five."

Chapter 175 is the comprehensive insurance statute, § 9 of which provides that the commissioner of insurance "shall each year compute the reserve liability or net value on December thirty-first of the preceding year of every life company . . . with respect to the policies . . . issued by such company" if before January 1, 1948, on one basis, and if after on another. G. L. (Ter. Ed.) c. 175, § 9, as appearing in St. 1943, c. 227, § 1. Section 9, five pages in length and much too long to be set forth here, requires the commissioner of insurance to use certain actuarial tables varying with type of policy and date of issue. In *Connecticut Mutual Life Ins. Co.* v. *Commonwealth,* 133 Mass. 161, 164, it was said that the "net value" of a policy under our statutes is a sum which with compound interest and with the addition of future net premiums will provide for the payment of the policy when it is to mature according to the appropriate table.

In its decision the Appellate Tax Board pointed out that there was no reference to reinsurance in c. 175, § 9, but de-

clared that "This matter is dealt with" in c. 175, § 20. The subject of reinsurance is manifestly dealt with in c. 175, § 20, but the precise question is whether it is there dealt with in such a way that the reserve liability of the issuing company which must be computed under c. 175, § 9, can be reduced by the amount of reinsurance.

The decision of the Appellate Tax Board quoted at length from G. L. (Ter. Ed.) c. 175, § 20, as amended by St. 1941, c. 343, by St. 1946, c. 508, and by St. 1948, c. 571. Chapter 175, § 20, reads in part: "When reinsurance is so effected the ceding . . . life company shall be charged thereafter with a reserve liability . . . representing the proportion of the obligation retained by it, and the company with which the reinsurance is effected shall be charged thereafter in like manner with the proportion of the obligation assumed by it. Both the companies shall together carry the same . . . reserve which the ceding company would have carried had it not reinsured the risk."

There is also a provision in c. 175, § 20, introduced by amendment in St. 1941, c. 343, which reads: "No credit shall be allowed to any ceding insurer for reinsurance made, ceded, renewed or otherwise becoming effective after September thirtieth, nineteen hundred and forty-one, as an admitted asset or as a reduction of liability, unless, by the terms of a written reinsurance agreement, the reinsurance is payable by the assuming insurer on the basis of the liability of the ceding insurer under any policy or contract reinsured without diminution because of the insolvency of the ceding insurer." The board found that by the terms of the written reinsurance agreement between Aetna and each of the reinsuring companies the reinsurance was payable by the assuming insurer on the basis of the liability of the ceding insurer.

The entire reasoning in the decision of the board is contained in one sentence: "Since the net value of the policies, as defined by statute (G. L. [Ter. Ed.] c. 175, § 9), is the reserve liability of the company upon its insurance contracts, — it would seem that the tax in the instant case

should be measured by the net value of the policies of insurance issued by Aetna as reduced by the net value of the life insurance held by the assuming companies under which said companies are obligated to pay the liability covered by said policies." This leaves many questions unanswered, and for assistance in their solution we must look to the contentions of the parties.

The taxpayer contends that the only place or occasion for charging a reserve of a life company is the commissioner's annual valuation pursuant to c. 175, § 9; and that since under the reinsurance section, § 20 of c. 175, the commissioner of insurance must charge the reserve required to support the reinsured risk to the reinsurer and only that required to support the retained risk to the ceding company, "that process is necessarily part of the 'basis of valuation'" referred to in the taxing section, § 20 of c. 63.

Some of the tax commission's contentions are stated at length in this paragraph. The pertinent tax statute, c. 63, § 20, as amended by St. 1941, c. 509, § 5, prescribes the payment of the excise "upon the net value of all policies . . . issued or assumed" by a company. Not only is there no stated exception, but the return must give "the total number of policies" and their "aggregate net value," the latter to be "the combined aggregate of the mean reserve computed for each policy, or each group of policies" on the basis of the insurance commissioner's valuation under c. 175, § 9, and § 9 only. Section 9 sets up a complete method for computing "the reserve liability or net value . . . with respect to the policies . . . issued" by every life company. There is no reference in § 9 to c. 175, § 20, nor in § 20 to § 9. The net value of any given policy will always be the same whether reinsured in whole or in part or not at all. This is because the conditions affecting liability, such as terms of the policy, age and condition of the insured, and the expected date of maturity, remain constant. The phrase, reserve liability, under c. 175, § 9, must be synonymous with net value. Not only are these terms

used in the alternative in that section, but subsection 8 of § 9 reads: "The aggregate net value computed in accordance with the requirements of this section shall be deemed the reserve liability of the company, to provide for which it shall hold funds of an amount equal thereto above all its other liabilities." Also, in c. 175, § 1, "Net value of policies" is defined as "the liability of a company upon its insurance contracts, other than accrued claims, computed by rules of valuation established by sections nine to twelve, inclusive." Short of a novation, the issuing company cannot escape liability by reinsuring unless the policy lapses or is paid at maturity. Under the Appellate Tax Board's decision it is impossible to harmonize all the pertinent statutory enactments. While the reserve liability under c. 175, § 9, is reduced, the net value will not be. There will thus be two different figures for these two phrases which by definition under § 9 should be the same. The position of the tax commission leads to no such inconsistency. A distinction must be made between the reserve liability of a company as to a particular policy and the security required by statute to secure that reserve liability. See § 9, subsection 8, quoted above. The effect of c. 175, § 20, is to reduce the amount of funds an issuing company must hold as security for a reinsured policy even though its reserve liability is unaffected. The Legislature in § 20 has allocated the proportion of that security between the ceding company and the assuming company.

While the statutory provisions could be clearer, our inclination is to support the result reached by the Appellate Tax Board. Notwithstanding that c. 175, §§ 9 and 20, do not in terms refer to each other, we think that the provision in § 20 as to the reserve liability with which the ceding company and the assuming company are to be proportionately charged must in reason refer to the reserve liability which must be computed under § 9. In the absence of unmistakable language we are unable to adopt the restricted interpretation by which a distinction is sought to be drawn between reserve liability and the amount of security to be

held for a reinsured policy. We think that most, if not all, of the suggested inconsistencies will disappear when § 9 is construed as capable of being affected by § 20 and not viewed as if insulated.

The tax commission relies upon an amendment to G. L. (Ter. Ed.) c. 175, § 20, enacted in 1946. For many years before that date, § 20 contained the provision: "Such reinsurance shall not *reduce the taxes to be paid by the ceding company, nor, if a life company, shall it* reduce the reserve to be charged to *it* [a life company], unless effected with a company authorized to issue policies in the commonwealth covering risks of the same kinds as those reinsured, or with a company incorporated or formed to reinsure and authorized to reinsure in the commonwealth risks of the same kinds as those reinsured." By St. 1946, c. 508, entitled, "An Act further regulating the effect upon the taxation of insurance companies of the reinsurance of risks thereby," the italicized words were struck out and the phrase in brackets was added. It now reads: "Such reinsurance shall not reduce the reserve to be charged to a life company, unless effected with a company authorized to issue policies in the commonwealth covering risks of the same kinds as those reinsured, or with a company incorporated or formed to reinsure and authorized to reinsure in the commonwealth risks of the same kinds as those reinsured."

In its brief the commission states: "prior to 1946 the statute permitted a life insurance company reinsuring with authorized companies to reduce its taxable base by the amount of the net value of policies reinsured with such companies, thereby reducing its excise tax liability. Thus, if the appellee were claiming a deduction for reinsurance in one of its excise tax returns covering a year prior to 1946, the appellee would be on solid ground." This concession is made notwithstanding that at all times c. 63, § 20, imposed an excise "upon the net value of all policies . . . issued or assumed," that c. 175, §§ 9 and 20, contained no mutual references, and that other statutory provisions outlined

above were the same as at present. Now by reason of a change in c. 175, § 20, we are told that this deduction has been taken away. We cannot see that St. 1946, c. 508, had such an effect. A reading of § 20, as now amended, does not convince us that it did.

It is argued that the purpose of the Legislature in enacting St. 1946, c. 508, was "to remove any deduction for reinsurance by life companies still on the net value tax basis, in order to bring the tax laws relating to such companies into conformity with the tax statutes relating to life[1] and other[2] companies on the premium received basis, where amounts paid to reinsuring companies for policies reinsured could no longer be deducted after 1945." There is no suggestion as to why the commissioner of corporations and taxation allowed the deduction for the frozen reserve of one of the assuming companies in the case at bar. We shall not speculate as to why the amendment was enacted. The result of this decision may be that when two companies are on a premium basis, the ceding company has no deduction and the assuming company is not taxable on the reinsured business; that when the ceding company is on a net value basis and the assuming company on a premium basis, neither is taxed on such business; and that when the ceding company is on a premium basis and the assuming company is on a net value basis, both companies are taxed on the reinsured business. If this be the result and an unintended one, the Legislature will be able to enact a clarifying amendment.

*Abatement granted in the amount of $768.73 with costs.*

---

[1] "The word 'premiums' as used in this section shall include all amounts received as consideration for life insurance policies without deduction for amounts paid to other companies for reinsurance . . . ." G. L. (Ter. Ed.) c. 63, § 20, as appearing in St. 1943, c. 531, § 1.

[2] See G. L. (Ter. Ed.) c. 63, § 22, as appearing in St. 1945, c. 721, § 1, as amended by St. 1946, c. 387, § 1.